UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NCF CHARITABLE TRUST<br>1408 North West Shore Blvd.<br>Suite 504<br>Tampa, FL 33622-2774 | )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. _____ |
| UNITED STATES OF AMERICA and<br>THE INTERNAL REVENUE SERVICE<br>1111 Constitution Avenue, N.W.<br>Washington, DC  20224 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |
| _____ | ) | |
| Serve On: | )<br>) | |
| Civil Processing Clerk<br>U.S. Attorney's Office<br>District of Columbia<br>Judiciary Center<br>Civil Division<br>10th Floor<br>555 Fourth Street, N.W.<br>Washington, D.C.  20530 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| The Honorable Alberto R. Gonzales<br>Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20530-0001 | )<br>)<br>)<br>)<br>)<br>) | |
| The Honorable Mark W. Everson<br>Commissioner<br>Internal Revenue Service<br>1111 Constitution Avenue, N.W.<br>Room 3000<br>Washington, D.C.  20224 | )<br>)<br>)<br>)<br>)<br>) | |

## COMPLAINT

Plaintiff, NCF Charitable Trust ("NCF"), by its undersigned attorneys, hereby files suit seeking declaratory relief against the Defendants, the United States of America and the Internal Revenue Service ("IRS"), and further states as follows:

## PARTIES

1.  NCF is a charitable trust, organized under and by virtue of the laws of the State of Florida, with its principle place of business located at 1408 North West Shore Boulevard, Suite 504, Tampa, Florida 33622-2774.

2.  The Defendants are the United States of America and the IRS, which is a federal bureau within the Department of the Treasury, with its principle place of business located at 1111 Constitution Avenue, N.W., Washington, D.C.  20224.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the parties and the subject matter hereof and venue is proper pursuant to 28 U.S.C. § 1346(e), 28 U.S.C. § 2201, and 26 U.S.C. § 7428.  This is an action for a declaratory judgment for the purpose of determining a question of actual controversy between the parties as more fully appears below.

## FACTS

4.      NCF was established on or about February 9, 2006 and is organized and operated exclusively for charitable, religious, and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively, the "Qualified Purposes") of the class of organizations which qualifies as exempt organizations ("Qualified Organizations")

under Sections 501(c)(3), 509 (a)(1) and 509 (a)(2) of the Internal Revenue Code of 1986, as amended from time to time (the "Code") and which supports and promotes Christian evangelism, edification and stewardship, including but not limited to those organizations specified in Schedule A of NCF's Trust Agreement (all of such organizations collectively being the "Supported Class"). Each Qualified Purpose must constitute a public charitable purpose under the laws of the State of Florida.

5.  On or about February 24, 2006, NCF petitioned the IRS for tax exempt status by filing a substantially complete Form 1023 pursuant to Revenue Procedure 90-27. This substantially complete form was submitted to the IRS Center at 201 W. Rivercenter Boulevard, Covington, Kentucky, 41011. In particular, NCF sought classification as an exempt organization under Section 501(c)(3) of the Code and as a supporting organization under Section 509(a)(3) of the Code. A copy of this Form 1023 and supporting documentation is attached hereto as Exhibit A.

6.  On or about March 2, 2006, the IRS acknowledged to the Foundation that it received its Form 1023. In that written acknowledgment, the IRS advised NCF that it "may expect to hear from [the IRS] within 120 days" in regard to the Form 1023.

7.  The IRS has a statutory obligation to provide a determination letter to NCF within 270 days of the filing of a substantially complete Form 1023. *See* 26 U.S.C. § 7428(b)(2). As of November 21, 2006 (270 days from the filing), NCF had not heard anything from the IRS. Upon inquiry, NCF determined that the file had been assigned to Mr. Marc Kennedy in the IRS field office located at 31 Hopkins Plaza, Baltimore, Maryland 21201. Four voicemail messages were left with Mr. Kennedy in order to ascertain the status of the application. However, neither Mr. Kennedy nor any other representative of the IRS has ever responded to these messages.

8.  Thereafter, on December 6, 2006, a written inquiry was faxed to Mr. Kennedy, reciting the lapse of the 270-day period and seeking a determination of NCF's tax exempt status. In that letter, NCF warned that a lack of response would necessitate the filing of a declaratory judgment action in the appropriate court in order to resolve the issue.  To date, nothing has been received from Mr. Kennedy or the IRS.

## COUNT I

### (Declaratory Judgment)

9.  The provisions of paragraphs 1 through 8 above are hereby incorporated by reference as if fully set forth herein.

10.  Under 28 U.S.C. § 2201 of the Declaratory Judgment Act and 26 U.S.C. § 7428 of the Code, this Court is empowered to issue a declaratory judgment regarding the initial qualification of an organization as an organization described in Section 501(c)(3) of the Code, and of an organization as a private foundation under Section 509(a) of the Code.

11.  NCF hereby seeks an Order declaring that it is exempt from federal income tax under Section 501(a) of the Code as an organization described in Section 501(c)(3) of the Code and as a supporting organization described in Section 509(a)(3) of the Code.

12.  The unexplained and inexcusable delay in ruling on the substantially complete Form 1023 Petition has caused NCF hardship and irreparable injury by thwarting significant and worthy donations during calendar year 2006.  Accordingly, there is an actual controversy within the jurisdiction of this Court, and declaratory relief will effectively adjudicate the rights of the parties.

13.  NCF is entitled to the relief requested because more than 270 days have passed since the filing of the substantially complete Form 1023 on February 24, 2006, and through no fault of NCF, the IRS still has not issued a Notice of Determination with respect to the Petition.  Due to the passage of the statutorily prescribed timeframe, all administrative remedies are deemed exhausted as a matter of law pursuant to 26 U.S.C. § 7428(b)(2).

14.  Pursuant to § 7430(a) of the Code, NCF is entitled to reasonable attorney's fees, costs and expenses in the prosecution of this action.

WHEREFORE, for the foregoing reasons, NCF respectfully requests that this Honorable Court enter an Order:

(a) declaring that NCF Charitable Trust is exempt from federal income tax under Section 501(a) of the Code as an organization described in Section 501(c)(3) of the Code and as a supporting organization described in Section 509(a)(3) of the Code; and

(b)  awarding NCF its reasonable attorney's fees, costs and expenses incurred in the prosecution of this action; and

(c)  awarding such other and further relief as this Court deems necessary and proper.


Respectfully submitted,


_____
Russell J. Pope (No. 426865)
POPE & HUGHES
29 W. Susquehanna Avenue
Suite 110
Towson, Maryland  21204
(410) 494-7777

Attorneys for NCF Charitable Trust

5

6

# NCF CHARITABLE TRUST

Application for Recognition of Exemption (Form 1023)

### SUBMISSION BINDER

### TABLE OF CONTENTS

Tab

Form 1023 Checklist..................................................................................................................I

Form 2848, Power of Attorney and Declaration of Representative........................................II

Cover Letter ...........................................................................................................................III

Application for Recognition of Exemption (Form 1023) ......................................................IV

Copy of NCF CHARITABLE TRUST
Trust Instrument.......................................................................................................................V

Copy of NCF CHARITABLE TRUST
By-Laws..................................................................................................................................VI

Attachments to Form 1023....................................................................................................VII

I.

# Form 1023 Checklist

## (Revised October 2004)

### Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code

**Note.** *Retain a copy of the completed Form 1023 in your permanent records. Refer to the* General Instructions *regarding Public Inspection of approved applications.*

<u>Check each box to finish your application (Form 1023). Send this completed Checklist with your filled-in application. If you have not answered all the items below, your application may be returned to you as incomplete.</u>

☒ Assemble the application and materials in this order:

- Form 1023 Checklist
- Form 2848, *Power of Attorney and Declaration of Representative* (if filing)
- Form 8821, *Tax Information Authorization* (if filing)
- Expedite request (if requesting)
- Application (Form 1023 and Schedules A through H, as required)
- Articles of organization
- Amendments to articles of organization in chronological order
- Bylaws or other rules of operation and amendments
- Documentation of nondiscriminatory policy for schools, as required by Schedule B
- Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation (if filing)
- All other attachments, including explanations, financial data, and printed materials or publications. Label each page with name and EIN.

☒ User fee payment placed in envelope on top of checklist. DO NOT STAPLE or otherwise attach your check or money order to your application. Instead, just place it in the envelope.

☒ Employer Identification Number (EIN)

☒ Completed Parts I through XI of the application, including any requested information and any required Schedules A through H.

- You must provide specific details about your past, present, and planned activities.
- Generalizations or failure to answer questions in the Form 1023 application will prevent us from recognizing you as tax exempt.
- Describe your purposes and proposed activities in specific easily understood terms.
- Financial information should correspond with proposed activities.

☒ Schedules. Submit only those schedules that apply to you and check either "Yes" or "No" below.

| | | |
|---|---|---|
| Schedule A   Yes ___ No _X_ | | Schedule E   Yes ___ No _X_ |
| Schedule B   Yes ___ No _X_ | | Schedule F   Yes ___ No _X_ |
| Schedule C   Yes ___ No _X_ | | Schedule G   Yes ___ No _X_ |
| Schedule D   Yes _X_ No ___ | | Schedule H   Yes ___ No _X_ |

☒ An exact copy of your complete articles of organization (creating document). Absence of the proper purpose and dissolution clauses is the number one reason for delays in the issuance of determination letters.

- Location of Purpose Clause from Part III, line 1 (Page, Article and Paragraph Number) Page 1, Section 1.1
- Location of Dissolution Clause from Part III, line 2b or 2c (Page, Article and Paragraph Number) or by operation of state law Page 2, Sections 2.2 and 2.3

☒ Signature of an officer, director, trustee, or other official who is authorized to sign the application.
- Signature at Part XI of Form 1023.

☒ Your name on the application must be the same as your legal name as it appears in your articles of organization.

Send completed Form 1023, user fee payment, and all other required information, to:

Internal Revenue Service
P.O. Box 192
Covington, KY 41012-0192

If you are using express mail or a delivery service, send Form 1023, user fee payment, and attachments to:

Internal Revenue Service
201 West Rivercenter Blvd.
Attn: Extracting Stop 312
Covington, KY 41011

II.

| Form **2848** (Rev. March 2004) Department of the Treasury Internal Revenue Service | **Power of Attorney and Declaration of Representative** ▶ Type or print. ▶ See the separate instructions. | OMB No. 1545-0150 For IRS Use Only Received by: Name _____ Telephone _____ Function _____ Date _____ |
| --- | --- | --- |

### Part I — Power of Attorney

**Caution:** *Form 2848 will not be honored for any purpose other than representation before the IRS.*

**1   Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

| Taxpayer name(s) and address NCF Charitable Trust 1408 North West Shore Blvd., Ste. 504 Tampa, FL 33622-2774 | Social security number(s) | Employer identification number 20-4326440 |
| --- | --- | --- |
| | Daytime telephone number 404-591-1780 | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2   Representative(s)** must sign and date this form on page 2, Part II.

| Name and address Emanuel J. Kallina, II 1122 Kenilworth Drive, Suite 507 Towson, MD 21204 | CAF No. 2600-86715R Telephone No. 410-377-2170 Fax No. 443-797-1147 Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |
| --- | --- |
| Name and address Courtney E. Toledo 1122 Kenilworth Drive, Suite 507 Towson, MD 21204 | CAF No. _____ Telephone No. 410-377-2170 Fax No. 443-797-1147 Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |
| Name and address | CAF No. _____ Telephone No. _____ Fax No. _____ Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3   Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (see the instructions for line 3) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) (see the instructions for line 3) |
| --- | --- | --- |
| Application for Recognition of Tax Exempt Status | Form 1023 | 2005-2006 |
| Income Tax Return | Form 990 | 2005-2006 |
| | | |

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for Line 4. Specific uses not recorded on CAF. . . . . . . . . . . . . . . . . . . . . ▶ ☐

**5   Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See **Unenrolled Return Preparer** on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**6   Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

For Privacy Act and Paperwork Reduction Notice, see page 4 of the instructions.    Form **2848** (Rev. 3-2004)

ISA
STF FED4975F.1

Form 2848 (Rev. 3-2004)  Page **2**

**7** **Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2.

**a** If you also want the second representative listed to receive a copy of notices and communications, check this box . . ▶ ☐
**b** If you do not want any notices or communications sent to your representative(s), check this box . . . . . . ▶ ☐

**8** **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here. . . . . . . . . . . . . . . ▶ ☐
**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9** **Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| | | |
|---|---|---|
| _____ Signature | _Feb 14 2006_ Date | _Secretary/Treasurer_ Title (if applicable) |
| _Gregory L. Speir_ Print Name | ☐☐☐☐☐ PIN Number | Print name of taxpayer from line 1 if other than individual |
| _____ Signature | _____ Date | _____ Title (if applicable) |
| _____ Print Name | ☐☐☐☐☐ PIN Number | |

**Part II**   **Declaration of Representative**

**Caution:** *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the instructions for Part II.*

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

  **a** Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
  **b** Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  **c** Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.
  **d** Officer—a bona fide officer of the taxpayer's organization.
  **e** Full-Time Employee—a full-time employee of the taxpayer.
  **f** Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
  **g** Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).
  **h** Unenrolled Return Preparer—the authority to practice before the Internal Revenue Service is limited by Treasury Department Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under examination by the IRS. See **Unenrolled Return Preparer** on page 2 of the instructions.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.** See the Part II instructions.

| Designation—Insert above letter (a–h) | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| a | Maryland | _____ | 2/17/2006 |
| a | Maryland | _Courtney E. Toledo_ | 2/17/2006 |
| | | | |

Form **2848** (Rev. 3-2004)

# III.

EMANUEL J. KALLINA, II *
COURTNEY E. TOLEDO

Of Counsel:
ROBERT J. PEREZ •
ELIZABETH B. ORB *

*   Also licensed to practice in DC
•   Only licensed to practice in Louisiana
-   Only licensed to practice in California and Massachusetts

# KALLINA & ASSOCIATES, LLC

LAW OFFICE
THE EXCHANGE
1122 KENILWORTH DRIVE, SUITE 507
TOWSON, MARYLAND 21204

STAFF
Cynthia A. Eoen
R. Fred M. Rodericks
Administrative Staff
Christina M. Bittner

(410) 277-2170
FAX: (443) 797-1147
E-MAIL: *administrator@kallinalaw.com*
*www.kallinalaw.com*

February 20, 2006

## VIA FEDERAL EXPRESS

Internal Revenue Service
201 West Rivercenter Blvd.
Attn: Extracting Stop 312
Covington, KY 41011

> Re:   **Application for Recognition of Exemption**
> **Taxpayer:   NCF Charitable Trust**
> **EIN:          20-4326440**

Dear Sir or Madam:

Enclosed please find a completed Application for Recognition of Exemption (Form 1023) and Schedule D as part of the request for a determination by NCF Charitable Trust ("Foundation") to be recognized as a tax-exempt supporting organization under Section 509(a)(3) of the Internal Revenue Code of 1986, as amended ("Code"). This Application includes the following:

1.   Completed Form 1023, to the extent of pages 1 through 12 (Parts I through XI), Schedules D and G, and attachments relating thereto;

2.   A user fee in the amount of $500;

3.   Form 1023 Checklist; and

4.   Copies of the Foundation's Trust Agreement and By-Laws (See, tabs marked "V" and "VI" respectively in the Submission Binder).

It is submitted that the Foundation comes within the intent of Code Section 509(a)(3) and the Treasury Regulations thereunder. In accordance with its Trust Agreement, the Foundation has been formed for the support or benefit of, to perform the functions of, or to carry out the purposes

---

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
February 20, 2005
Page 2 of 2

of the class of charities which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code ("Qualified Organizations"), as described in Treasury Regulation section 1.509(a)-4(g), whose purposes are similar to, but no broader than the purposes designated by the Foundation's Trust Agreement and By-Laws ("Supported Class"). Specifically, the Foundation meets the Organizational and Operational Tests under Code Section 509(a)(3) by being "operated, supervised or controlled by" National Christian Charitable Foundation, Inc.. a Qualified Organization within the Supported Class.

Pursuant to Section 5.5 of the Foundation's Trust Agreement and Section 1.5 of the Foundation's By-Laws, the Foundation Trustees will be appointed by National Christian Charitable Foundation, Inc., a Qualified Organization within the Supported Class.

*For these reasons, the Foundation qualifies as a Code Section 509(a)(3) supporting organization.*

## MISCELLANEOUS

The issues pending with respect to this Application for Recognition of Exemption are not now pending before any field office of the Internal Revenue Service.

A Power of Attorney (Form 2848), authorizing Kallina & Associates, LLC, to represent the Foundation before the Internal Revenue Service with respect to this matter is also enclosed. It is requested that all correspondence with respect to this Application be addressed to me. If any additional information is desired, please telephone me at the number set forth above.

A conference is hereby requested, if any decision should be under consideration inconsistent with the requested exemption letter, before any such decision is actually made.

Thank you for your consideration.

Respectfully submitted,

Emanuel J. Kallina, II

EJK/caj
Enclosures

cc:    Mr. Gregory L. Sperry, Trustee
F:\Work NCF Documents\NCF Charitable Trust - 1023\Cover letter to IRS.doc

This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

IV.

| Form **1023**<br>(Rev. October 2004)<br>Department of the Treasury<br>Internal Revenue Service | **Application for Recognition of Exemption**<br>**Under Section 501(c)(3) of the Internal Revenue Code** | OMB No. 1545-0056<br>**Note:** If exempt status is approved, this application will be open for public inspection. |

*Use the instructions to complete this application and for a definition of all **bold** items.* For additional help, call IRS Exempt Organizations Customer Account Services toll-free at 1-877-829-5500. Visit our website at **www.irs.gov** for forms and publications. If the required information and documents are not submitted with payment of the appropriate user fee, the application may be returned to you.

Attach additional sheets to this application if you need more space to answer fully. Put your name and EIN on each sheet and identify each answer by Part and line number. Complete Parts I - XI of Form 1023 and submit only those Schedules (A through H) that apply to you.

### Part I — Identification of Applicant

| | |
|---|---|
| 1  Full name of organization (exactly as it appears in your **organizing document**)<br><br>NCF Charitable Trust | 2  c/o Name (if applicable) |

| 3  **Mailing address** (Number and street) (see instructions) | Room/Suite | 4  Employer Identification Number (EIN) |
|---|---|---|
| 1408 North West Shore Blvd. | 504 | 20-4326440 |
| City or town, state or country, and ZIP + 4 | | 5  Month the annual accounting period ends (01 - 12) |
| Tampa, FL 33622-2774 | | 12 |

| 6  Primary contact (officer, director, trustee, or authorized representative) | |
|---|---|
| a Name: Emanuel J. Kallina, II | b Phone: 410-377-2170 x. 223 |
| | c Fax: (optional) 443-797-1147 |

7  Are you represented by an authorized representative, such as an attorney or accountant? If "Yes,"  ☒ Yes  ☐ No
provide the authorized representative's name, and the name and address of the authorized
representative's firm. Include a completed Form 2848, *Power of Attorney and Declaration of
Representative*, with your application if you would like us to communicate with your representative.
Kallina & Associates, LLC, 1122 Kenilworth Drive, Suite 507, Towson, MD 21204

8  Was a person who is not one of your officers, directors, trustees, employees, or an authorized  ☐ Yes  ☒ No
representative listed in line 7, paid, or promised payment, to help plan, manage, or advise you about
the structure or activities of your organization, or about your financial or tax matters? If "Yes,"
provide the person's name, the name and address of the person's firm, the amounts paid or
promised to be paid, and describe that person's role.

9a  Organization's website:

 b  Organization's email: (optional)

10  Certain organizations are not required to file an information return (Form 990 or Form 990-EZ). If you  ☐ Yes  ☒ No
are granted tax-exemption, are you claiming to be excused from filing Form 990 or Form 990-EZ? If
"Yes," explain. See the instructions for a description of organizations not required to file Form 990 or
Form 990-EZ.

11  Date incorporated if a corporation, or formed, if other than a corporation.    (MM/DD/YYYY) -02/09/2006

12  Were you formed under the laws of a **foreign country**?    ☐ Yes  ☒ No
If "Yes," state the country.

**For Paperwork Reduction Act Notice, see page 24 of the instructions.**                    Form **1023** (Rev. 10-2004)

Form 1023 (Rev. 10-2004)    Name: NCF Charitable Trust    EIN: 20-4326440    Page **2**

**Part II**    **Organizational Structure**

You must be a corporation (including a limited liability company), an unincorporated association, or a trust to be tax exempt. (See instructions.) DO NOT file this form unless you can check "Yes" on lines 1, 2, 3, or 4.

| | | Yes | No |
|---|---|---|---|
| 1 | Are you a **corporation**? If "Yes," attach a copy of your articles of incorporation showing **certification of filing** with the appropriate state agency. Include copies of any amendments to your articles and be sure they also show state filing certification. | ☐ Yes | ☒ No |
| 2 | Are you a **limited liability company (LLC)**? If "Yes," attach a copy of your articles of organization showing certification of filing with the appropriate state agency. Also, if you adopted an operating agreement, attach a copy. Include copies of any amendments to your articles and be sure they show state filing certification. Refer to the instructions for circumstances when an LLC should not file its own exemption application. | ☐ Yes | ☒ No |
| 3 | Are you an **unincorporated association**? If "Yes," attach a copy of your articles of association, constitution, or other similar organizing document that is dated and includes at least two signatures. Include signed and dated copies of any amendments. | ☐ Yes | ☒ No |
| 4a | Are you a **trust**? If "Yes," attach a signed and dated copy of your trust agreement. Include signed and dated copies of any amendments. | ☒ Yes | ☐ No |
| b | Have you been funded? If "No," explain how you are formed without anything of value placed in trust. | ☒ Yes | ☐ No |
| 5 | Have you adopted **bylaws**? If "Yes," attach a current copy showing date of adoption. If "No," explain how your officers, directors, or trustees are selected. | ☒ Yes | ☐ No |

**Part III**    **Required Provisions in Your Organizing Document**

The following questions are designed to ensure that when you file this application, your organizing document contains the required provisions to meet the organizational test under section 501(c)(3). Unless you can check the boxes in both lines 1 and 2, your organizing document does not meet the organizational test. DO NOT file this application until you have amended your organizing document. Submit your original and amended organizing documents (showing state filing certification if you are a corporation or an LLC) with your application.

1    Section 501(c)(3) requires that your organizing document state your exempt purpose(s), such as charitable, religious, educational, and/or scientific purposes. Check the box to confirm that your organizing document meets this requirement. Describe specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document. Refer to the instructions for exempt purpose language. Location of Purpose Clause (Page, Article, and Paragraph): <u>Page 1, Section 1.1</u>    ☒

2a    Section 501(c)(3) requires that upon dissolution of your organization, your remaining assets must be used exclusively for exempt purposes, such as charitable, religious, educational, and/or scientific purposes. Check the box on line 2a to confirm that your organizing document meets this requirement by express provision for the distribution of assets upon dissolution. If you rely on state law for your dissolution provision, do not check the box on line 2a and go to line 2c.    ☒

2b    If you checked the box on line 2a, specify the location of your dissolution clause (Page, Article, and Paragraph). Do not complete line 2c if you checked box 2a.    <u>Page 2, Sections 2.2 and 2.3</u>

2c    See the instructions for information about the operation of state law in your particular state. Check this box if you rely on operation of state law for your dissolution provision and indicate the state: _____    ☐

**Part IV**    **Narrative Description of Your Activities**

Using an attachment, describe your past, present, and planned activities in a narrative. If you believe that you have already provided some of this information in response to other parts of this application, you may summarize that information here and refer to the specific parts of the application for supporting details. You may also attach representative copies of newsletters, brochures, or similar documents for supporting details to this narrative. Remember that if this application is approved, it will be open for public inspection. Therefore, your narrative description of activities should be thorough and accurate. Refer to the instructions for information that must be included in your description.

**Part V**    **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors**

1a    List the names, titles, and mailing addresses of all of your officers, directors, and trustees. For each person listed, state their total annual **compensation**, or proposed compensation, for all services to the organization, whether as an officer, employee, or other position. Use actual figures, if available. Enter "none" if no compensation is or will be paid. If additional space is needed, attach a separate sheet. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual/actual or estimated) |
|---|---|---|---|
| see attached | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Form **1023** (Rev. 10-2004)

STF FED2125F.2

Form 1023 (Rev. 10-2004)   Name: NCF Charitable Trust   EIN: 20-4326440   Page 3

**Part V** Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)*

b List the names, titles, and mailing addresses of each of your five highest compensated employees who receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation. Do not include officers, directors, or trustees listed in line 1a.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|---|---|---|---|
| NONE | | | |
| | | | |
| | | | |
| | | | |
| | | | |

c List the names, names of businesses, and mailing addresses of your five highest compensated independent contractors that receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|---|---|---|---|
| NONE | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The following "Yes" or "No" questions relate to *past, present, or planned* relationships, transactions, or agreements with your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, and 1c.

2a Are any of your officers, directors, or trustees **related** to each other through **family or business relationships**? If "Yes," identify the individuals and explain the relationship. ☐ Yes  ☒ No

 b Do you have a business relationship with any of your officers, directors, or trustees other than through their position as an officer, director, or trustee? If "Yes," identify the individuals and describe the business relationship with each of your officers, directors, or trustees. ☐ Yes  ☒ No

 c Are any of your officers, directors, or trustees related to your highest compensated employees or highest compensated independent contractors listed on lines 1b or 1c through family or business relationships? If "Yes," identify the individuals and explain the relationship. ☐ Yes  ☒ No

3a For each of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c, attach a list showing their name, qualifications, average hours worked, and duties.

 b Do any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c receive compensation from any other organizations, whether tax exempt or taxable, that are related to you through **common control**? If "Yes," identify the individuals, explain the relationship between you and the other organization, and describe the compensation arrangement. ☒ Yes  ☐ No

4 In establishing the compensation for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, and 1c, the following practices are recommended, although they are not required to obtain exemption. Answer "Yes" to all the practices you use.

 a Do you or will the individuals that approve compensation arrangements follow a conflict of interest policy? ☒ Yes  ☐ No

 b Do you or will you approve compensation arrangements in advance of paying compensation? ☒ Yes  ☐ No

 c Do you or will you document in writing the date and terms of approved compensation arrangements? ☒ Yes  ☐ No

Form **1023** (Rev. 10-2004)

STF FED2129L3

Form 1023 (Rev 10-2004)    Name: NCF Charitable Trust    EIN: 20-4326440    Page **4**

**Part V** Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)*

d Do you or will you record in writing the decision made by each individual who decided or voted on compensation arrangements?    ☒ Yes    ☐ No

e Do you or will you approve compensation arrangements based on information about compensation paid by similarly situated taxable or tax-exempt organizations for similar services, current compensation surveys compiled by independent firms, or actual written offers from similarly situated organizations? Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation.    ☒ Yes    ☐ No

f Do you or will you record in writing both the information on which you relied to base your decision and its source?    ☒ Yes    ☐ No

g If you answered "No" to any item on lines 4a through 4f, describe how you set compensation that is **reasonable** for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c.

5a Have you adopted a **conflict of interest policy** consistent with the sample conflict of interest policy in Appendix A to the instructions? If "Yes," provide a copy of the policy and explain how the policy has been adopted, such as by resolution of your governing board. If "No," answer lines 5b and 5c.    ☒ Yes    ☐ No

b What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you for setting their own compensation?

c What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you regarding business deals with themselves?

Note: A conflict of interest policy is recommended though it is not required to obtain exemption. Hospitals, see Schedule C, Section I, line 14.

6a Do you or will you compensate any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, or 1c through **non-fixed payments**, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are determined, who is eligible for such arrangements, whether you place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation.    ☐ Yes    ☒ No

b Do you or will you compensate any of your employees, other than your officers, directors, trustees, or your five highest compensated employees, who receive or will receive compensation of more than $50,000 per year, through non-fixed payments, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are or will be determined, who is or will be eligible for such arrangements, whether you place or will place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation.    ☐ Yes    ☒ No

7a Do you or will you purchase any goods, services, or assets from any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such purchase that you made or intend to make, from whom you make or will make such purchases, how the terms are or will be negotiated at arm's length, and explain how you determine or will determine that you pay no more than **fair market value**. Attach copies of any written contracts or other agreements relating to such purchases.    ☒ Yes    ☐ No

b Do you or will you sell any goods, services, or assets to any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such sales that you made or intend to make, to whom you make or will make such sales, how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you are or will be paid at least fair market value. Attach copies of any written contracts or other agreements relating to such sales.    ☐ Yes    ☒ No

8a Do you or will you have any leases, contracts, loans, or other agreements with your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," provide the information requested in lines 8b through 8f.    ☒ Yes    ☐ No

b Describe any written or oral arrangements that you made or intend to make.

c Identify with whom you have or will have such arrangements.

d Explain how the terms are or will be negotiated at arm's length.

e Explain how you determine you pay no more than fair market value or you are paid at least fair market value.

f Attach copies of any signed leases, contracts, loans, or other agreements relating to such arrangements.

9a Do you or will you have any leases, contracts, loans, or other agreements with any organization in which any of your officers, directors, or trustees are also officers, directors, or trustees, or in which any individual officer, director, or trustee owns more than a 35% interest? If "Yes," provide the information requested in lines 9b through 9f.    ☒ Yes    ☐ No

Form **1023** (Rev 10-2004)

STF FED0129F 4

Form 1023 (Rev. 10-2004)    Name NCF Charitable Trust    EIN 20-4326440    Page **5**

**Part V**  Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)*

   b  Describe any written or oral arrangements you made or intend to make.
   c  Identify with whom you have or will have such arrangements.
   d  Explain how the terms are or will be negotiated at arm's length.
   e  Explain how you determine or will determine you pay no more than fair market value or that you are paid at least fair market value.
   f  Attach a copy of any signed leases, contracts, loans, or other agreements relating to such arrangements.

**Part VI**  Your Members and Other Individuals and Organizations That Receive Benefits From You

The following "Yes" or "No" questions relate to goods, services, and funds you provide to individuals and organizations as part of your activities. Your answers should pertain to *past, present*, and *planned* activities. (See instructions.)

1a  In carrying out your exempt purposes, do you provide goods, services, or funds to individuals? If "Yes," describe each program that provides goods, services, or funds to individuals.   ☐ Yes   ☒ No

   b  In carrying out your exempt purposes, do you provide goods, services, or funds to organizations? If "Yes," describe each program that provides goods, services, or funds to organizations.   ☒ Yes   ☐ No

2  Do any of your programs limit the provision of goods, services, or funds to a specific individual or group of specific individuals? For example, answer "Yes," if goods, services, or funds are provided only for a particular individual, your members, individuals who work for a particular employer, or graduates of a particular school. If "Yes," explain the limitation and how recipients are selected for each program.   ☐ Yes   ☒ No

3  Do any individuals who receive goods, services, or funds through your programs have a family or business relationship with any officer, director, trustee, or with any of your highest compensated employees or highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c? If "Yes," explain how these related individuals are eligible for goods, services, or funds.   ☐ Yes   ☒ No

**Part VII**  Your History

The following "Yes" or "No" questions relate to your history. (See instructions.)

1  Are you a **successor** to another organization? Answer "Yes," if you have taken or will take over the activities of another organization; you took over 25% or more of the fair market value of the net assets of another organization; or you were established upon the conversion of an organization from for-profit to non-profit status. If "Yes," complete Schedule G.   ☒ Yes   ☐ No

2  Are you submitting this application more than 27 months after the end of the month in which you were legally formed? If "Yes," complete Schedule E.   ☐ Yes   ☒ No

**Part VIII**  Your Specific Activities

The following "Yes" or "No" questions relate to specific activities that you may conduct. Check the appropriate box. Your answers should pertain to *past, present*, and *planned* activities. (See instructions.)

1  Do you support or oppose candidates in **political** campaigns in any way? If "Yes," explain.   ☐ Yes   ☒ No

2a  Do you attempt to **influence legislation?** If "Yes," explain how you attempt to influence legislation and complete line 2b. If "No," go to line 3a.   ☐ Yes   ☒ No

   b  Have you made or are you making an **election** to have your legislative activities measured by expenditures by filing Form 5768? If "Yes," attach a copy of the Form 5768 that was already filed or attach a completed Form 5768 that you are filing with this application. If "No," describe whether your attempts to influence legislation is a substantial part of your activities. Include the time and money spent on your attempts to influence legislation as compared to your total activities.   ☐ Yes   ☒ No

3a  Do you or will you operate bingo or **gaming** activities? If "Yes," describe who conducts them, and list all revenue received or expected to be received and expenses paid or expected to be paid in operating these activities. **Revenue and expenses** should be provided for the time periods specified in Part IX, Financial Data.   ☐ Yes   ☒ No

   b  Do you or will you enter into contracts or other agreements with individuals or organizations to conduct bingo or gaming for you? If "Yes," describe any written or oral arrangements that you made or intend to make, identify with whom you have or will have such arrangements, explain how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you pay no more than fair market value or you will be paid at least fair market value. Attach copies or any written contracts or other agreements relating to such arrangements.   ☐ Yes   ☒ No

   c  List the states and local jurisdictions, including Indian Reservations, in which you conduct or will conduct gaming or bingo.

Form **1023** (Rev. 10-2004)

STF FED2129F.5

Form 1023 (Rev. 10-2004)    Name: NCF Charitable Trust    EIN: 20-4326440    Page 6

## Part VIII    Your Specific Activities (Continued)

**4a** Do you or will you undertake **fundraising**? If "Yes," check all the fundraising programs you do or will conduct. (See instructions.)    ☒ Yes    ☐ No

☒ mail solicitations
☒ email solicitations
☒ personal solicitations
☐ vehicle, boat, plane, or similar donations
☐ foundation grant solicitations

☒ phone solicitations
☐ accept donations on your website
☐ receive donations from another organization's website
☐ government grant solicitations
☐ Other

Attach a description of each fundraising program.

**b** Do you or will you have written or oral contracts with any individuals or organizations to raise funds for you? If "Yes," describe these activities. Include all revenue and expenses from these activities and state who conducts them. Revenue and expenses should be provided for the time periods specified in Part IX, Financial Data. Also, attach a copy of any contracts or agreements.    ☐ Yes    ☒ No

**c** Do you or will you engage in fundraising activities for other organizations? If "Yes," describe these arrangements. Include a description of the organizations for which you raise funds and attach copies of all contracts or agreements.    ☒ Yes    ☐ No

**d** List all states and local jurisdictions in which you conduct fundraising. For each state or local jurisdiction listed, specify whether you fundraise for your own organization, you fundraise for another organization, or another organization fundraises for you.

**e** Do you or will you maintain separate accounts for any contributor under which the contributor has the right to advise on the use or distribution of funds? Answer "Yes" if the donor may provide advice on the types of investments, distributions from the types of investments, or the distribution from the donor's contribution account. If "Yes," describe this program, including the type of advice that may be provided and submit copies of any written materials provided to donors.    ☒ Yes    ☐ No

**5** Are you affiliated with a governmental unit? If "Yes," explain.    ☐ Yes    ☒ No

**6a** Do you or will you engage in **economic development**? If "Yes," describe your program.    ☐ Yes    ☒ No
**b** Describe in full who benefits from your economic development activities and how the activities promote exempt purposes.

**7a** Do or will persons other than your employees or volunteers **develop** your facilities? If "Yes," describe each facility, the role of the developer, and any business or family relationship(s) between the developer and your officers, directors, or trustees.    ☐ Yes    ☒ No

**b** Do or will persons other than your employees or volunteers **manage** your activities or facilities? If "Yes," describe each activity and facility, the role of the manager, and any business or family relationship(s) between the manager and your officers, directors, or trustees.    ☒ Yes    ☐ No

**c** If there is a business or family relationship between any manager or developer and your officers, directors, or trustees, identify the individuals, explain the relationship, describe how contracts are negotiated at arm's length so that you pay no more than fair market value, and submit a copy of any contracts or other agreements.

**8** Do you or will you enter into **joint ventures**, including partnerships or **limited liability companies** treated as partnerships, in which you share profits and losses with partners other than section 501(c)(3)organizations? If "Yes," describe the activities of these joint ventures in which you participate.    ☐ Yes    ☒ No

**9a** Are you applying for exemption as a childcare organization under section 501(k)? If "Yes," answer lines 9b through 9d. If "No," go to line 10.    ☐ Yes    ☒ No

**b** Do you provide child care so that parents or caretakers of children you care for can be gainfully **employed** (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k).    ☐ Yes    ☐ No

**c** Of the children for whom you provide child care, are 85% or more of them cared for by you to enable their parents or caretakers to be gainfully employed (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k).    ☐ Yes    ☐ No

**d** Are your services available to the general public? If "No," describe the specific group of people for whom your activities are available. Also, see the instructions and explain how you qualify as a childcare organization described in section 501(k).    ☐ Yes    ☐ No

**10** Do you or will you publish, own, or have rights in music, literature, tapes, artworks, choreography, scientific discoveries, or other **intellectual property**? If "Yes," explain. Describe who owns or will own any copyrights, patents, or trademarks, whether fees are or will be charged, how the fees are determined, and how any items are or will be produced, distributed, and marketed.    ☐ Yes    ☒ No

Form **1023** (Rev. 10-2004)

STF FED2123F.6

| Form 1023 (Rev. 10-2004) | Name: NCF Charitable Trust | EIN: 20-4326440 | Page 7 |

**Part VIII**  **Your Specific Activities** *(Continued)*

11  Do you or will you accept contributions of: real property; conservation easements; closely held securities; intellectual property such as patents, trademarks, and copyrights; works of music or art; licenses; royalties; automobiles, boats, planes, or other vehicles; or collectibles of any type? If "Yes," describe each type of contribution, any conditions imposed by the donor on the contribution, and any agreements with the donor regarding the contribution.  ☒ Yes   ☐ No

12a  Do you or will you operate in a **foreign country** or **countries?** If "Yes," answer lines 12b through 12d. If "No," go to line 13a.  ☐ Yes   ☒ No

b  Name the foreign countries and regions within the countries in which you operate.

c  Describe your operations in each country and region in which you operate.

d  Describe how your operations in each country and region further your exempt purposes.

13a  Do you or will you make grants, loans, or other distributions to organization(s)? If "Yes," answer lines 13b through 13g. If "No," go to line 14a.  ☒ Yes   ☐ No

b  Describe how your grants, loans, or other distributions to organizations further your exempt purposes.

c  Do you have written contracts with each of these organizations? If "Yes," attach a copy of each contract.  ☐ Yes   ☒ No

d  Identify each recipient organization and any **relationship** between you and the recipient organization.

e  Describe the records you keep with respect to the grants, loans, or other distributions you make.

f  Describe your selection process, including whether you do any of the following:

(i)  Do you require an application form? If "Yes," attach a copy of the form.  ☐ Yes   ☒ No

(ii)  Do you require a grant proposal? If "Yes," describe whether the grant proposal specifies your responsibilities and those of the grantee, obligates the grantee to use the grant funds only for the purposes for which the grant was made, provides for periodic written reports concerning the use of grant funds, requires a final written report and an accounting of how grant funds were used, and acknowledges your authority to withhold and/or recover grant funds in case such funds are, or appear to be, misused.  ☐ Yes   ☒ No

g  Describe your procedures for oversight of distributions that assure you the resources are used to further your exempt purposes, including whether you require periodic and final reports on the use of resources.

14a  Do you or will you make grants, loans, or other distributions to foreign organizations? If "Yes," answer lines 14b through 14f. If "No," go to line 15.  ☐ Yes   ☒ No

b  Provide the name of each foreign organization, the country and regions within a country in which each foreign organization operates, and describe any relationship you have with each foreign organization.

c  Does any foreign organization listed in line 14b accept contributions earmarked for a specific country or specific organization? If "Yes," list all earmarked organizations or countries.  ☐ Yes   ☐ No

d  Do your contributors know that you have ultimate authority to use contributions made to you at your discretion for purposes consistent with your exempt purposes? If "Yes," describe how you relay this information to contributors.  ☐ Yes   ☐ No

e  Do you or will you make pre-grant inquiries about the recipient organization? If "Yes," describe these inquiries, including whether you inquire about the recipient's financial status, its tax-exempt status under the Internal Revenue Code, its ability to accomplish the purpose for which the resources are provided, and other relevant information.  ☐ Yes   ☐ No

f  Do you or will you use any additional procedures to ensure that your distributions to foreign organizations are used in furtherance of your exempt purposes? If "Yes," describe these procedures, including site visits by your employees or compliance checks by impartial experts, to verify that grant funds are being used appropriately.  ☐ Yes   ☐ No

Form 1023 (Rev. 10-2004)        Name NCF Charitable Trust                    EIN 20-4326440              Page 8

**Part VIII   Your Specific Activities** *(Continued)*

| | | | |
|---|---|---|---|
| 15 | Do you have a **close connection** with any organizations? If "Yes," explain. | ☒ Yes | ☐ No |
| 16 | Are you applying for exemption as a **cooperative hospital service organization** under section 501(e)? If "Yes," explain. | ☐ Yes | ☒ No |
| 17 | Are you applying for exemption as a **cooperative service organization of operating educational organizations** under section 501(f)? If "Yes," explain. | ☐ Yes | ☒ No |
| 18 | Are you applying for exemption as a **charitable risk pool** under section 501(n)? If "Yes," explain. | ☐ Yes | ☒ No |
| 19 | Do you or will you operate a **school**? If "Yes," complete Schedule B. Answer "Yes," whether you operate a school as your main function or as a secondary activity. | ☐ Yes | ☒ No |
| 20 | Is your main function to provide **hospital or medical care**? If "Yes," complete Schedule C. | ☐ Yes | ☒ No |
| 21 | Do you or will you provide **low-income housing** or housing for the **elderly** or **handicapped**? If "Yes," complete Schedule F. | ☐ Yes | ☒ No |
| 22 | Do you or will you provide scholarships, fellowships, educational loans, or other educational grants to individuals, including grants for travel, study, or other similar purposes? If "Yes," complete Schedule H. | ☐ Yes | ☒ No |

**Note: Private foundations** may use Schedule H to request advance approval of individual grant procedures.

Form 1023 (Rev. 10-2004)    Name: NCF Charitable Trust    EIN: 20-4326440    Page **9**

**Part IX    Financial Data**

For purposes of this schedule, years in existence refer to completed tax years. If in existence 4 or more years, complete the schedule for the most recent 4 tax years. If in existence more than 1 year but less than 4 years, complete the statements for each year in existence and provide projections of your likely revenues and expenses based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. If in existence less than 1 year, provide projections of your likely revenues and expenses for the current year and the 2 following years, based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. (See instructions.)

**A. Statement of Revenues and Expenses**

| | Type of revenue or expense | Current tax year | 3 prior tax years or 2 succeeding tax years | | | | (e) Provide Total for (a) through (d) |
|---|---|---|---|---|---|---|---|
| | | (a) From 2.2006 To 12.2006 | (b) From 1.2007 To 12.2007 | (c) From 1.2008 To 12.2008 | (d) From To | | |
| Revenues | 1 Gifts, grants, and contributions received (do not include unusual grants) | 65,000,000 | 75,000,000 | 85,000,000 | | | 225,000,000.00 |
| | 2 Membership fees received | 0 | 0 | 0 | | | 0.00 |
| | 3 Gross investment income | 80,000 | 85,000 | 90,000 | | | 255,000.00 |
| | 4 Net unrelated business income | 900,000 | 900,000 | 900,000 | | | 2,700,000.00 |
| | 5 Taxes levied for your benefit | | | | | | 0.00 |
| | 6 Value of services or facilities furnished by a governmental unit without charge (not including the value of services generally furnished to the public without charge) | 0 | 0 | 0 | | | 0.00 |
| | 7 Any revenue not otherwise listed above or in lines 9–12 below (attach an itemized list) | | | | | | 0.00 |
| | 8 Total of lines 1 through 7 | 65,980,000.00 | 75,985,000.00 | 85,990,000.00 | | 0.00 | 227,955,000.00 |
| | 9 Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to your exempt purposes (attach itemized list) | | | | | | 0.00 |
| | 10 Total of lines 8 and 9 | 65,980,000.00 | 75,985,000.00 | 85,990,000.00 | | 0.00 | 227,955,000.00 |
| | 11 Net gain or loss on sale of capital assets (attach schedule and see instructions) | | | | | | 0.00 |
| | 12 Unusual grants | | | | | | 0.00 |
| | 13 Total Revenue Add lines 10 through 12 | 65,980,000.00 | 75,985,000.00 | 85,990,000.00 | | 0.00 | 227,955,000.00 |
| Expenses | 14 Fundraising expenses | 0 | 0 | 0 | | | |
| | 15 Contributions, gifts, grants, and similar amounts paid out (attach an itemized list) | 33,000,000 | 54,500,000 | 78,500,000 | | | |
| | 16 Disbursements to or for the benefit of members (attach an itemized list) | 0 | 0 | 0 | | | |
| | 17 Compensation of officers, directors, and trustees | 0 | | 0 | | | |
| | 18 Other salaries and wages | 20,000 | 25,000 | 30,000 | | | |
| | 19 Interest expense | 0 | 0 | 0 | | | |
| | 20 Occupancy (rent, utilities, etc.) | 0 | 0 | 0 | | | |
| | 21 Depreciation and depletion | 0 | 0 | 0 | | | |
| | 22 Professional fees | 10,000 | 10,000 | 10,000 | | | |
| | 23 Any expense not otherwise classified, such as program services (attach itemized list) | | | | | | |
| | 24 Total Expenses Add lines 14 through 23 | 33,030,000.00 | 54,535,000.00 | 78,540,000.00 | | 0.00 | |

Form **1023** (Rev. 10-2004)

STF FED21.9F.9

Form 1023 (Rev. 10-2004)    Name NCF Charitable Trust    EIN 20-4326440    Page **10**

## Part IX    Financial Data (Continued)

### B. Balance Sheet (for your most recently completed tax year)

Year End: 2006

(Whole dollars)

#### Assets

| | | |
|---|---|---:|
| 1 | Cash | 1 | 100 |
| 2 | Accounts receivable, net | 2 | |
| 3 | Inventories | 3 | |
| 4 | Bonds and notes receivable (attach an itemized list) | 4 | |
| 5 | Corporate stocks (attach an itemized list) | 5 | |
| 6 | Loans receivable (attach an itemized list) | 6 | |
| 7 | Other investments (attach an itemized list) | 7 | |
| 8 | Depreciable and depletable assets (attach an itemized list) | 8 | |
| 9 | Land | 9 | |
| 10 | Other assets (attach an itemized list) | 10 | |
| 11 | Total Assets (add lines 1 through 10) | 11 | 100 |

#### Liabilities

| | | |
|---|---|---:|
| 12 | Accounts payable | 12 | |
| 13 | Contributions, gifts, grants, etc. payable | 13 | |
| 14 | Mortgages and notes payable (attach an itemized list) | 14 | |
| 15 | Other liabilities (attach an itemized list) | 15 | |
| 16 | Total Liabilities (add lines 12 through 15) | 16 | 0 |

#### Fund Balances or Net Assets

| | | |
|---|---|---:|
| 17 | Total fund balances or net assets | 17 | 100 |
| 18 | Total Liabilities and Fund Balances or Net Assets (add lines 16 and 17) | 18 | 100 |

19 Have there been any substantial changes in your assets or liabilities since the end of the period shown above? If "Yes," explain.    ☐ Yes    ☒ No

## Part X    Public Charity Status

Part X is designed to classify you as an organization that is either a **private foundation** or a **public charity**. Public charity status is a more favorable tax status than private foundation status. If you are a private foundation, Part X is designed to further determine whether you are a **private operating foundation**. (See instructions.)

1a Are you a private foundation? If "Yes," go to line 1b. If "No," go to line 5 and proceed as instructed. If you are unsure, see the instructions.    ☐ Yes    ☒ No

b As a private foundation, section 508(e) requires special provisions in your organizing document in addition to those that apply to all organizations described in section 501(c)(3). Check the box to confirm that your organizing document meets this requirement, whether by express provision or by reliance on operation of state law. Attach a statement that describes specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document or by operation of state law. See the instructions, including Appendix B, for information about the special provisions that need to be contained in your organizing document. Go to line 2.

2 Are you a private operating foundation? To be a private operating foundation you must engage directly in the active conduct of charitable, religious, educational, and similar activities, as opposed to indirectly carrying out these activities by providing grants to individuals or other organizations. If "Yes," go to line 3. If "No," go to the signature section of Part XI.    ☐ Yes    ☐ No

3 Have you existed for one or more years? If "Yes," attach financial information showing that you are a private operating foundation; go to the signature section of Part XI. If "No," continue to line 4.    ☐ Yes    ☐ No

4 Have you attached either (1) an affidavit or opinion of counsel, (including a written affidavit or opinion from a certified public accountant or accounting firm with expertise regarding this tax law matter), that sets forth facts concerning your operations and support to demonstrate that you are likely to satisfy the requirements to be classified as a private operating foundation; or (2) a statement describing your proposed operations as a private operating foundation?    ☐ Yes    ☐ No

5 If you answered "No" to line 1a, indicate the type of public charity status you are requesting by checking one of the choices below. You may check only one box.

The organization is not a private foundation because it is:

a 509(a)(1) and 170(b)(1)(A)(i)—a church or a convention or association of churches. Complete and attach Schedule A.    ☐

b 509(a)(1) and 170(b)(1)(A)(ii)—a **school.** Complete and attach Schedule B.    ☐

c 509(a)(1) and 170(b)(1)(A)(iii)—a **hospital,** a cooperative hospital service organization, or a medical research organization operated in conjunction with a hospital. Complete and attach Schedule C.    ☐

d 509(a)(3)—an organization supporting either one or more organizations described in line 5a through c, f, g, or h or a publicly supported section 501(c)(4), (5), or (6) organization. Complete and attach Schedule D.    ☒

Form **1023** (Rev. 10-2004)

STF FED129F.10

Form 1023 (Rev. 10-2004)      Name: NCF Charitable Trust                    EIN: 20-4326440      Page **11**

**Part X      Public Charity Status** *(Continued)*

e  509(a)(4)—an organization organized and operated exclusively for testing for public safety.

f  509(a)(1) and 170(b)(1)(A)(iv)—an organization operated for the benefit of a college or university that is owned or operated by a governmental unit.

g  509(a)(1)and 170(b)(1)(A)(vi)—an organization that receives a substantial part of its financial support in the form of contributions from publicly supported organizations, from a governmental unit, or from the general public.

h  509(a)(2)—an organization that normally receives not more than one-third of its financial support from gross **investment income** and receives more than one-third of its financial support from contributions, membership fees, and gross receipts from activities related to its exempt functions (subject to certain exceptions).

i  A publicly supported organization, but unsure if it is described in 5g or 5h. The organization would like the IRS to decide the correct status.

6  If you checked box g, h, or i in question 5 above, you must request either an **advance** or a **definitive** ruling by selecting one of the boxes below. Refer to the instructions to determine which type of ruling you are eligible to receive.

a  **Request for Advance Ruling:** By checking this box and signing the consent, pursuant to section 6501(c)(4) of the Code you request an advance ruling and agree to extend the statute of limitations on the assessment of excise tax under section 4940 of the Code. The tax will apply only if you do not establish public support status at the end of the 5-year advance ruling period. The assessment period will be extended for the 5 advance ruling years to 8 years, 4 months, and 15 days beyond the end of the first year. You have the right to refuse or limit the extension to a mutually agreed-upon period of time or issue(s). Publication 1035, *Extending the Tax Assessment Period*, provides a more detailed explanation of your rights and the consequences of the choices you make. You may obtain Publication 1035 free of charge from the IRS web site at *www.irs.gov* or by calling toll-free 1-800-829-3676. Signing this consent will not deprive you of any appeal rights to which you would otherwise be entitled. If you decide not to extend the statute of limitations, you are not eligible for an advance ruling.

**Consent Fixing Period of Limitations Upon Assessment of Tax Under Section 4940 of the Internal Revenue Code**

For Organization

_____      _____      _____
(Signature of Officer, Director, Trustee, or other      (Type or print name of signer)                          (Date)
authorized official)

                                                 _____
                                                 (Type or print title or authority of signer)

For Director, Exempt Organizations

By  _____                    Date  _____

b  **Request for Definitive Ruling:** Check this box if you have completed one tax year of at least 8 full months and you are requesting a definitive ruling. To confirm your public support status, answer line 6b(i) if you checked box g in line 5 above. Answer line 6b(ii) if you checked box h in line 5 above. If you checked box i in line 5 above, answer both lines 6b(i) and (ii).

  (i)  (a) Enter 2% of line 8, column (e) on Part IX-A. Statement of Revenues and Expenses.   . . . . . . _____

       (b) Attach a list showing the name and amount contributed by each person, company, or organization whose gifts totaled more than the 2% amount. If the answer is "None," check this box.

  (ii)  (a) For each year amounts are included on lines 1, 2, and 9 of Part IX-A. Statement of Revenues and Expenses, attach a list showing the name of and amount received from each **disqualified person.** If the answer is "None," check this box.

       (b) For each year amounts are included on line 9 of Part IX-A. Statement of Revenues and Expenses, attach a list showing the name of and amount received from each payer, other than a disqualified person, whose payments were more than the larger of (1) 1% of line 10, Part IX-A. Statement of Revenues and Expenses, or (2) $5,000. If the answer is "None," check this box.

7  Did you receive any unusual grants during any of the years shown on Part IX-A. Statement of      ☐ Yes    ☒ No
Revenues and Expenses? If "Yes," attach a list including the name of the contributor, the date and amount of the grant, a brief description of the grant, and explain why it is unusual.

STF FED2129F 11

Form 1023 (Rev. 10-2004)    Name: NCF Charitable Trust    EIN: 20 – 4326440 Page **12**

**Part XI**    **User Fee Information**

You must include a user fee payment with this application. It will not be processed without your paid user fee. If your average annual gross receipts have exceeded or will exceed $10,000 annually over a 4-year period, you must submit payment of $500. If your gross receipts have not exceeded or will not exceed $10,000 annually over a 4-year period, the required user fee payment is $150. See instructions for Part XI, for a definition of **gross receipts** over a 4-year period. Your check or money order must be made payable to the United States Treasury. User fees are subject to change. Check our website at www.irs.gov and type "User Fee" in the keyword box, or call Customer Account Services at 1-877-829-5500 for current information.

| | | | |
|---|---|---|---|
| 1 | Have your annual gross receipts averaged or are they expected to average not more than $10,000? If "Yes," check the box on line 2 and enclose a user fee payment of $150 (Subject to change—see above). If "No," check the box on line 3 and enclose a user fee payment of $500 (Subject to change—see above). | ☐ Yes | ☐ No |
| 2 | Check the box if you have enclosed the reduced user fee payment of $150 (Subject to change). | | |
| 3 | Check the box if you have enclosed the user fee payment of $500 (Subject to change). | | |

I declare under the penalties of perjury that I am authorized to sign this application on behalf of the above organization and that I have examined this application, including the accompanying schedules and attachments, and to the best of my knowledge it is true, correct, and complete.

**Please Sign Here** ▶

*(Signature)*
Signature of Officer, Director, Trustee, or other authorized official

Gregory L Sperry
(Type or print name of signer)

Secretary / Treasurer
(Type or print title or authority of signer)

Feb 14, 2006
(Date)

**Reminder:** Send the completed Form 1023 Checklist with your filled-in application.    Form **1023** (Rev. 10-2004)

Form 1023 (Rev. 10-2004)    Name NCF Charitable Trust    EIN 20-4326440    Page **18**

## Schedule D. Section 509(a)(3) Supporting Organizations

**Section I**    Identifying Information About the Supported Organization(s)

1   State the names, addresses, and EINs of the supported organizations. If additional space is needed, attach a separate sheet.

| Name | Address | EIN |
|---|---|---|
| see attached | | |

2   Are all supported organizations listed in line 1 public charities under section 509(a)(1) or (2)? If "Yes," go to Section II. If "No," go to line 3.   ☒ Yes    ☐ No

3   Do the supported organizations have tax-exempt status under section 501(c)(4), 501(c)(5), or 501(c)(6)?   ☐ Yes    ☒ No

If "Yes," for each 501(c)(4), (5), or (6) organization supported, provide the following financial information:

- Part IX-A. Statement of Revenues and Expenses, lines 1–13 and
- Part X, lines 6b(ii)(a), 6b(ii)(b), and 7.

If "No," attach a statement describing how each organization you support is a public charity under section 509(a)(1) or (2).

**Section II**    Relationship with Supported Organization(s)—Three Tests

To be classified as a supporting organization, an organization must meet one of three relationship tests:

Test 1: "Operated, supervised, or controlled by" one or more publicly supported organizations, or
Test 2: "Supervised or controlled in connection with" one or more publicly supported organizations, or
Test 3: "Operated in connection with" one or more publicly supported organizations.

1   Information to establish the "operated, supervised, or controlled by" relationship (Test 1)
Is a majority of your governing board or officers elected or appointed by the supported organization(s)? If "Yes," describe the process by which your governing board is appointed and elected; go to Section III. If "No," continue to line 2.   ☒ Yes    ☐ No

2   Information to establish the "supervised or controlled in connection with" relationship (Test 2)
Does a majority of your governing board consist of individuals who also serve on the governing board of the supported organization(s)? If "Yes," describe the process by which your governing board is appointed and elected; go to Section III. If "No," go to line 3.   ☐ Yes    ☐ No

3   Information to establish the "operated in connection with" responsiveness test (Test 3)
Are you a trust from which the named supported organization(s) can enforce and compel an accounting under state law? If "Yes," explain whether you advised the supported organization(s) in writing of these rights and provide a copy of the written communication documenting this; go to Section II, line 5. If "No," go to line 4a.   ☐ Yes    ☐ No

4   Information to establish the alternative "operated in connection with" responsiveness test (Test 3)
a   Do the officers, directors, trustees, or members of the supported organization(s) elect or appoint one or more of your officers, directors, or trustees? If "Yes," explain and provide documentation; go to line 4d, below. If "No," go to line 4b.   ☐ Yes    ☐ No

b   Do one or more members of the governing body of the supported organization(s) also serve as your officers, directors, or trustees or hold other important offices with respect to you? If "Yes," explain and provide documentation; go to line 4d, below. If "No," go to line 4c.   ☐ Yes    ☐ No

c   Do your officers, directors, or trustees maintain a close and continuous working relationship with the officers, directors, or trustees of the supported organization(s)? If "Yes," explain and provide documentation.   ☐ Yes    ☐ No

d   Do the supported organization(s) have a significant voice in your investment policies, in the making and timing of grants, and in otherwise directing the use of your income or assets? If "Yes," explain and provide documentation.   ☐ Yes    ☐ No

e   Describe and provide copies of written communications documenting how you made the supported organization(s) aware of your supporting activities.

STF E102726F.15

Form 1023 (Rev. 10-2004)    Name NCF Charitable Trust    EIN 20-4326440    Page 19

Schedule D. Section 509(a)(3) Supporting Organizations (Continued)

| Section II | Relationship with Supported Organization(s)—Three Tests (Continued) | | |
|---|---|---|---|

5  Information to establish the "operated in connection with" integral part test (Test 3)
Do you conduct activities that would otherwise be carried out by the supported organization(s)? If "Yes," explain and go to Section III. If "No," continue to line 6a.    ☐ Yes    ☐ No

6  Information to establish the alternative "operated in connection with" integral part test (Test 3)
a  Do you distribute at least 85% of your annual net income to the supported organization(s)? If "Yes," go to line 6b. (See instructions.)    ☐ Yes    ☐ No

If "No," state the percentage of your income that you distribute to each supported organization. Also explain how you ensure that the supported organization(s) are attentive to your operations.

b  How much do you contribute annually to each supported organization? Attach a schedule.
c  What is the total annual revenue of each supported organization? If you need additional space, attach a list.

d  Do you or the supported organization(s) earmark your funds for support of a particular program or activity? If "Yes," explain.    ☐ Yes    ☐ No

7a  Does your organizing document specify the supported organization(s) by name? If "Yes," state the article and paragraph number and go to Section III. If "No," answer line 7b.    ☐ Yes    ☐ No

b  Attach a statement describing whether there has been an historic and continuing relationship between you and the supported organization(s).

| Section III | Organizational Test | | |
|---|---|---|---|

1a  If you met relationship Test 1 or Test 2 in Section II, your organizing document must specify the supported organization(s) by name, or by naming a similar purpose or charitable class of beneficiaries. If your organizing document complies with this requirement, answer "Yes." If your organizing document does not comply with this requirement, answer "No." and see the instructions.    ☒ Yes    ☐ No

b  If you met relationship Test 3 in Section II, your organizing document must generally specify the supported organization(s) by name. If your organizing document complies with this requirement, answer "Yes," and go to Section IV. If your organizing document does not comply with this requirement, answer "No," and see the instructions.    ☐ Yes    ☐ No

| Section IV | Disqualified Person Test | | |
|---|---|---|---|

You do not qualify as a supporting organization if you are controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers or one or more organizations that you support. Foundation managers who are also disqualified persons for another reason are disqualified persons with respect to you.

1a  Do any persons who are disqualified persons with respect to you, (except individuals who are disqualified persons only because they are foundation managers), appoint any of your foundation managers? If "Yes," (1) describe the process by which disqualified persons appoint any of your foundation managers, (2) provide the names of these disqualified persons and the foundation managers they appoint, and (3) explain how control is vested over your operations (including assets and activities) by persons other than disqualified persons.    ☐ Yes    ☒ No

b  Do any persons who have a family or business relationship with any disqualified persons with respect to you, (except individuals who are disqualified persons only because they are foundation managers), appoint any of your foundation managers? If "Yes," (1) describe the process by which individuals with a family or business relationship with disqualified persons appoint any of your foundation managers, (2) provide the names of these disqualified persons, the individuals with a family or business relationship with disqualified persons, and the foundation managers appointed, and (3) explain how control is vested over your operations (including assets and activities) in individuals other than disqualified persons.    ☐ Yes    ☒ No

c  Do any persons who are disqualified persons, (except individuals who are disqualified persons only because they are foundation managers), have any influence regarding your operations, including your assets or activities? If "Yes," (1) provide the names of these disqualified persons, (2) explain how influence is exerted over your operations (including assets and activities), and (3) explain how control is vested over your operations (including assets and activities) by individuals other than disqualified persons.    ☐ Yes    ☒ No

51F FED2129F.19

Form 1023 (Rev. 10-2004)    Name: NCF Charitable Trust    EIN: 20-4326440    Page 24

## Schedule G. Successors to Other Organizations

| | | |
|---|---|---|
| 1a | Are you a **successor** to a for-profit organization? If "Yes," explain the relationship with the predecessor organization that resulted in your creation and complete line 1b. | ☐ Yes  ☒ No |
| b | Explain why you took over the activities or assets of a for-profit organization or converted from for-profit to nonprofit status. | |
| 2a | Are you a successor to an organization other than a for-profit organization? Answer "Yes" if you have taken or will take over the activities or assets of another organization; or you have taken or will take over 25% or more of the fair market value of the net assets of another organization. If "Yes," explain the relationship with the other organization that resulted in your creation. | ☒ Yes  ☐ No |
| b | Provide the tax status of the predecessor organization. | |
| c | Did you or did an organization to which you are a successor previously apply for tax exemption under section 501(c)(3) or any other section of the Code? If "Yes," explain how the application was resolved. | ☒ Yes  ☐ No |
| d | Was your prior tax exemption or the tax exemption of an organization to which you are a successor revoked or suspended? If "Yes," explain. Include a description of the corrections you made to re-establish tax exemption. | ☐ Yes  ☒ No |
| e | Explain why you took over the activities or assets of another organization. | |

3  Provide the name, last address, and EIN of the predecessor organization and describe its activities.
   Name: NCCF Trust    EIN: 58-6370659
   Address: 952 Echo Lane, Suite 190, Houston, TX 77024

4  List the owners, partners, principal stockholders, officers, and governing board members of the predecessor organization. Attach a separate sheet if additional space is needed.

| Name | Address | Share/Interest (If a for-profit) |
|---|---|---|
| National Christian Charitable Foundation, Inc. | 1100 Johnson Ferry Road  Atlanta, GA 30342 | Trustee |
| | | |
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| 5 | Do or will any of the persons listed in line 4, maintain a working relationship with you? If "Yes," describe the relationship in detail and include copies of any agreements with any of these persons or with any for-profit organizations in which these persons own more than a 35% interest. | ☒ Yes  ☐ No |
| 6a | Were any assets transferred, whether by gift or sale, from the predecessor organization to you? If "Yes," provide a list of assets, indicate the value of each asset, explain how the value was determined, and attach an appraisal, if available. For each asset listed, also explain if the transfer was by gift, sale, or combination thereof. | ☐ Yes  ☒ No |
| b | Were any restrictions placed on the use or sale of the assets? If "Yes," explain the restrictions. | ☐ Yes  ☒ No |
| c | Provide a copy of the agreement(s) of sale or transfer. | |
| 7 | Were any debts or liabilities transferred from the predecessor for-profit organization to you? If "Yes," provide a list of the debts or liabilities that were transferred to you, indicating the amount of each, how the amount was determined, and the name of the person to whom the debt or liability is owed. | ☐ Yes  ☒ No |
| 8 | Will you lease or rent any property or equipment previously owned or used by the predecessor for-profit organization, or from persons listed in line 4, or from for-profit organizations in which these persons own more than a 35% interest? If "Yes," submit a copy of the lease or rental agreement(s). Indicate how the lease or rental value of the property or equipment was determined. | ☐ Yes  ☒ No |
| 9 | Will you lease or rent property or equipment to persons listed in line 4, or to for-profit organizations in which these persons own more than a 35% interest? If "Yes," attach a list of the property or equipment, provide a copy of the lease or rental agreement(s), and indicate how the lease or rental value of the property or equipment was determined. | ☐ Yes  ☒ No |

Form 1023 (Rev. 10-2004)

STF FED2126F.24



# NCF CHARITABLE TRUST
# AGREEMENT

## NCF TRUST
## TABLE OF CONTENTS

| | | |
|---|---|---|
| **Section 1** | **Recitals** | 1 |
| 1.1 | Purpose | 1 |
| 1.2 | Operation, Supervision or Control | 1 |
| 1.3 | Delivery of Property | 1 |
| | | |
| **Section 2** | **Name, Duration and Termination** | 1 |
| 2.1 | Name of Trust | 1 |
| 2.2 | Duration of Trust | 2 |
| 2.3 | Disposition Upon Termination of Trust | 2 |
| | | |
| **Section 3** | **Title and Acceptance of Property** | 2 |
| 3.1 | Title of Trust Property | 2 |
| 3.2 | Acceptance of Property | 2 |
| | | |
| **Section 4** | **Distributions, Accountability and Prohibited Transactions** | 2 |
| 4.1 | Fiduciary Capacity | 2 |
| 4.2 | Trustee Discretion | 2 |
| 4.3 | Annual Accounting | 3 |
| 4.4 | Contributions by Taxable Corporations | 3 |
| 4.5 | No Private Inurement | 3 |
| 4.6 | Limitations on Legislative Activities | 3 |
| 4.7 | Prohibition Against Political Activity | 3 |
| 4.8 | Limitations on Trust Activities | 3 |
| 4.9 | Authorized Distributions | 3 |
| | | |
| **Section 5** | **The Trustees** | 3 |
| 5.1 | Generally | 3 |
| 5.2 | Number of Trustees | 3 |
| 5.3 | Majority Voting | 4 |
| 5.4 | No Control by Disqualified Persons | 5 |
| 5.5 | Appointment and Tenure of Trustees | 4 |
| 5.6 | Removal of Trustee | 4 |
| 5.7 | Resignation of Trustee | 4 |
| 5.8 | Vacancy on Board | 4 |
| | | |
| **Section 6** | **Powers, Authority and Discretion of the Trustees** | 4 |
| 6.1 | Generally | 4 |
| 6.2 | Trust Assets | 4 |
| 6.3 | Claims | 5 |
| 6.4 | Retain Assets | 5 |
| 6.5 | Borrow | 5 |

## NCF TRUST
## TABLE OF CONTENTS

| | | |
|---|---|---|
| 6.6 | Litigation | 5 |
| 6.7 | Employ Advisors and Other Agents | 5 |
| 6.8 | Employ Counsel and Agents | 5 |
| 6.9 | Custodian | 5 |
| 6.10 | Internal Revenue Service Matters | 6 |
| 6.11 | Investment Powers | 6 |
| 6.12 | Securities and Business Interests | 6 |
| 6.13 | Distributions In Kind | 6 |
| 6.14 | Environmental Hazards on Trust Property | 6 |
| 6.15 | Written Instruments | 7 |
| 6.16 | Organize a Nonprofit Corporation | 7 |
| 6.17 | Settlor(s) Intention | 7 |
| **Section 7** | **Amendment of This Agreement** | 7 |
| 7.1 | Generally | 7 |
| 7.2 | Restrictions on Amendment | 7 |
| 7.3 | Maintain with Trust Records | 7 |
| **Section 8** | **Liability of the Trustees** | 8 |
| 8.1 | No Bond Required | 8 |
| 8.2 | Limited Liability | 8 |
| 8.3 | Indemnification | 8 |
| **Section 9** | **Governing Law, Counterparts and Reliance of Third Parties** | 8 |
| 9.1 | State Law | 8 |
| 9.2 | Changing State Law and or Situs of Trust Assets | 8 |
| 9.3 | Counterparts and Execution in Triplicate | 8 |
| 9.4 | Notary Acknowledgment Required | 8 |
| 9.5 | Reliance | 9 |
| 9.6 | Loss of Supporting Organization Status | 9 |
| 9.7 | Headings | 9 |

## NCF CHARITABLE TRUST

## AGREEMENT

THIS TRUST AGREEMENT ("Agreement") is made this 9th day of February, 2006, by JASON E. HAVENS, of Okaloosa County, Florida, the settlor ("Settlor") of the charitable trust created by this Agreement ("Trust"); and NCF CORPORATION, a Florida not-for-profit corporation, exempt from taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended from time to time ("Code"), and qualified as a public charity under Section 509(a)(3)(A) of the Code, and its successor(s) and assign(s), as trustee(s) of this Trust ("Trustees").

## WITNESSETH

**Section 1     Recitals**

1.1     Purpose. This Trust is organized and shall be operated exclusively for charitable, religious, and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively the "Qualified Purposes") of the class of organizations defined below which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of Code ("Qualified Organizations") and which supports and promotes Christian evangelism, edification, and stewardship, including but not limited to those organizations specified on Schedule A, which is attached hereto and specifically made a part hereof by this reference (all of such organizations collectively being the "Supported Class"). Each Qualified Purpose must constitute a public charitable purpose under State Law (defined below).

1.2     Operation, Supervision, and Control. This Trust shall be operated, supervised, or controlled by the NATIONAL CHRISTIAN CHARITABLE FOUNDATION, INC., a Qualified Organization within the Supported Class.

1.3     Delivery of Property. In consideration of the premises, the mutual covenants and agreements contained herein, and intending to be legally bound hereby, the Settlor, contemporaneous with the execution of this Agreement, has assigned, transferred, and delivered to the Trustees the assets listed in Schedule B attached hereto and specifically made a part hereof by this reference, to have and to hold the same -- and any cash, securities, insurance policies or proceeds thereof, real estate, or other property which the Trustees, pursuant to any of the provisions hereof, may purchase or otherwise acquire at any time(s) by any means whatsoever (including but not limited to any acquisition by purchase, conveyance, transfer, gift, devise, or bequest) -- upon the trusts, uses, and purposes hereinafter set forth.

**Section 2     Name, Duration and Termination**

2.1     Name of Trust. The name of this Trust shall be "NCF CHARITABLE TRUST."

2.2     Duration of Trust. This Trust shall continue forever unless and until the Trustees shall decide to terminate the Trust, which decision may be made by the Trustees at any time. On such termination, the Trustees shall pay or make provision for the payment of all expenses, costs, and liabilities, and then shall distribute the net assets exclusively for one or more Qualified Purposes, and/or to one or more Qualified Organizations within the Supported Class and/or other organizations authorized by the Treasury Regulations or by revenue procedures or revenue rulings of the Internal Revenue Service to receive such assets.

2.3     Disposition Upon Termination of Trust. If the Trustees fail to distribute all net assets upon termination as set forth above, then the remaining net assets shall be disposed by the appropriate court of the county in which the principal office of the Trust is then located, exclusively for the Qualified Purposes, and/or to one or more organizations described in Section 501(c)(3) and qualified as tax-exempt under Section 170(b)(1)(A)(i)-(vi) or 509(a)(2) as such court shall determine.

## Section 3    Title and Acceptance of Property

3.1     Title of Trust Property. The Trustees are hereby vested with all right, title, and interest in and to property contributed hereto, acquired hereunder, or otherwise held hereunder, and are authorized and empowered to exercise and enjoy all the options, benefits, rights, and privileges of ownership of the property held hereunder.

3.2     Acceptance of Property. The Trustees may (but shall not be required to) accept property, whether real, personal, or mixed; by way of gift, bequest, devise, or otherwise; from any person, firm, trust, or corporation; to be held, administered, and disposed of in accordance with and pursuant to the provisions of this Agreement; but no gift, bequest, or devise of any such property shall be accepted by the Trustees if it is legally conditioned or limited in a manner as to require the disposition of income or principal to any person or organization other than a Qualified Organization within the Supported Class or for any purpose other than a Qualified Purpose, or as shall in the opinion of the Trustees jeopardize the federal income tax exemption of this Trust under Section 509(a)(3) of the Code.

## Section 4    Distributions, Accountability, and Prohibited Transactions

4.1     Fiduciary Capacity. The Trustees shall hold all income and principal of the Trust in a fiduciary capacity and shall make payments or distributions from income and/or principal in such amounts and for such Qualified Purposes and/or to such Qualified Organizations within the Supported Class as the Trustees shall from time to time determine. The Trustees shall allocate Trust receipts and expenses between fiduciary income and principal in accordance with State Law. The Trustees in their discretion may exercise the power described in Section 738.104 of the Florida Statutes to adjust between principal and income, as appropriate, and, in addition, may convert any income interest into a unitrust interest, or a unitrust interest to an income interest, as the Trustees see fit, all as provided in

2

Section 738.1041 of the Florida Statutes, despite any provision of those sections to the contrary.

4.2 **Trustees' Discretion.** The Trustees shall have complete and uncontrolled authority, power, and discretion over the distribution and allocation of the net income and principal of the Trust for any one or more of the Qualified Purposes and/or to any one or more Qualified Organizations within the Supported Class. The Trustees shall not be required to equalize, or to follow any rule or precept of equality in making, distributions of net income or principal from the Trust among the various Qualified Purposes and/or Qualified Organizations within the Supported Class.

4.3 **Annual Accounting.** The Trustees shall produce or cause to be produced an annual accounting.

4.4 **Contributions by Taxable Corporations.** The income or principal derived from contributions by taxable corporations shall be distributed by the Trustees for use solely within the United States or its possessions.

4.5 **No Private Inurement.** No part of the net earnings of this Trust shall inure to or be payable to or for the benefit of any Trustee, private shareholder, or individual, except that the Trust is authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of a Qualified Purpose.

4.6 **Limitations on Legislative Activities.** No substantial part of the activities of this Trust shall be the carrying on of propaganda, or otherwise attempting to influence legislation.

4.7 **Prohibition Against Political Activity.** No part of the activities of this Trust shall be the participation in, or intervention in (including the publishing or distribution of statements), any political campaign on behalf of or in opposition to any candidate for public office.

4.8 **Limitations on Trust Activities.** This Trust shall not carry on any activities other than those permitted to be carried on by (i) a corporation or trust described in Section 501(c)(3) of the Code and tax-exempt under Section 509(a)(3) of the Code, and (ii) a trust the contributions to which are deductible under Section 170(c)(2) of the Code.

4.9 **Authorized Distributions.** This Trust shall be authorized to make distributions for Qualified Purposes or to Qualified Organizations with the Supported Class.

## Section 5    The Trustees

5.1 **Generally.** The business and affairs of the Trust shall be managed by the Board of Trustees ("Board"). The Trustees may create such positions within the Board and

may proscribe such rules for its governance and functioning as it deems appropriate, including the adoption of By-Laws.

5.2      Number of Trustees. The number of Trustees shall not be less than one (1), nor more than twenty-five (25); provided, however, that the Trustees through the By-Laws shall fix the number of Trustees and can increase the number of Trustees beyond twenty-five (25), and can establish classes of Trustees other than as set forth in this Agreement.

5.3      Majority Voting. Except as otherwise specifically provided to the contrary in this Agreement, all elections, resolutions, and other matters requiring a vote of the Trustees shall be had and all questions shall be decided by the affirmative vote of a majority of all votes entitled to be cast thereon at a duly constituted meeting of the Trustees; and where this Agreement requires a two-thirds (2/3) vote, it shall mean the affirmative vote of at least two-thirds (2/3) of all votes entitled to be cast thereon at a duly constituted meeting of the Trustees.

5.4      No Control by Disqualified Persons. At no time shall the Board be constituted as to be controlled directly or indirectly by one or more disqualified persons, as defined in Section 4946 of the Code, other than foundation managers and other than one or more organizations described in Section 509(a)(1) or (2) of the Code.

5.5      Appointment and Tenure of Trustees. Except as provided below, the Trustees shall be appointed each year at the annual meeting of Trustees, and shall hold office until the annual meeting of Trustees next succeeding their appointment and thereafter until their respective successors have been duly appointed and qualified. The Trustees shall be appointed by the NATIONAL CHRISTIAN CHARITABLE FOUNDATION, INC. (the "Appointor").

5.6      Removal of Trustee. Any Trustee may be removed from office with or without cause by the Appointor.

5.7      Resignation of Trustee. Any Trustee may resign upon reasonable notice to all other Trustees.

5.8      Vacancy on Board. If the number of Trustees collectively should become less than one (1), the Appointor shall fill such vacancy as soon as reasonably possible. If a vacancy otherwise occurs on the Board of Trustees, the Appointor may appoint a person or entity to fill such vacancy. A Trustee appointed to fill a vacancy shall serve until the next annual meeting of Trustees and thereafter until his or her successor is duly elected and qualified.

## Section 6      Powers, Authority, and Discretion of the Trustees

6.1      Generally. All powers, authority, and discretion exercisable by the Trustees under this Trust or by law shall be binding and conclusive on all interested parties; shall be exercisable by the Trustees in their sole and absolute discretion; shall be construed in the broadest possible manner; and shall be exercisable without prior

or subsequent application to any court under the jurisdiction of which this Trust may be administered. Not in derogation of or in limitation upon the powers, authority, and discretion conferred by law upon a trustee, the Trustees are vested with the following powers, authority, and discretion:

6.2     Trust Assets. To alter, repair, improve, erect buildings upon, demolish, manage, partition, mortgage, lease for any period (including a period in excess of any fixed by statute or extending beyond the duration of this Trust), exchange, grant options to lease or to buy, and sell or dispose of, at public or private sale, and upon such conditions and such terms as to cash and credit as it deems advisable, any of the Trust assets.

6.3     Claims. To compromise, settle, subordinate, arbitrate, extend, renew, modify, or release, in whole or in part, any claim held by it or held against any of the Trust assets hereunder.

6.4     Retain Assets. To continue to hold a business, investment, or other property transferred to it hereunder in the form in which it shall be when transferred or as the form thereof may be changed pursuant to the other provisions of this Agreement, and to make additional investments in such retained assets, all regardless of Section 518.11 of the Florida Statutes and of any other laws or rules of law governing the diversification or investment of trust funds.

6.5     Borrow. To borrow such sums for such period and upon such terms as the Trustees deem advisable; and to pledge or mortgage any of the assets of the Trust as security for the repayment thereof; and to renew from time to time any indebtedness of the Trust; provided, however, no lender shall see to or be liable for the application of the proceeds and the Trustees shall not be personally liable for any such loan.

6.6     Litigation. To commence or defend litigation with respect to the Trust assets, at the expense of the Trust assets.

6.7     Employ Advisors and Other Agents. To employ any person, firm, corporation, bank, or trust company for advice with respect to investment policy or any other matter; but the Trustees may follow or refrain from following any recommendation so obtained, and such recommendations shall not in any way limit the discretionary power and authority conferred upon the Trustees hereunder with respect to investments or other matters.

6.8     Employ Counsel and Agents. To employ counsel and/or agents in the administration of the Trust and to pay such counsel and/or agents reasonable compensation. No individual acting as a Trustee hereunder shall be disqualified, because of his or her fiduciary relationship, (i) from rendering professional services to the Trust and receiving reasonable compensation therefor or (ii) from serving and receiving reasonable compensation for his or her services as an officer and/or director (or in otherwise taking an active part in the management and operation of the business) of any corporation the stock of which, in whole or in part, is held by the Trust, or

5

(iii) for services rendered to or in connection with a sole proprietorship, a partnership, or any other type of business or financial venture in which the Trust shall have an interest.

6.9    Custodian. To employ a custodian within or without the United States, and to acquire, hold, register, or dispose of property in the name of such custodian, or its agent or nominee, without designation of fiduciary capacity.

6.10   Internal Revenue Service Matters. To enter into any and all agreements with the Internal Revenue Service or any other governmental body and to execute, from time to time, any declarations of policy or disclaimers restricting the powers, authority, and discretion granted to the Trustees.

6.11   Investment Powers. To invest and to reinvest the Trust assets in every kind of property, real, personal or mixed, and every kind of investment, including corporate and government obligations of every kind; marketable securities, whether preferred or common; shares, units, interests, or any other form of ownership of business entities or investment vehicles, whether registered or not; life insurance on the life of individuals; real estate; closely held businesses, whether organized as a subchapter S corporation, a subchapter C corporation, a partnership, an LLC, or otherwise; private equity investments; start-up enterprises; common trust funds; and or mutual funds; all regardless of Section 518.11 of the Florida Statutes and of any other laws or rules of law governing the diversification or investment of trust funds.

6.12   Securities and Business Interests. With respect to any investment held by the Trustees, to participate in and consent to any corporate or financial reorganization, dissolution, liquidation, merger, consolidation, sale, or lease, or in and to any other change in its financial structure; and to become a depositor with any protective, reorganization, or similar committee, and to make any necessary payments incident to the foregoing; to organize or participate in the organization of corporations or other business entities, and to transfer to them any part or all of the Trust assets in exchange for an investment therein; to exercise or to sell any conversion, subscription, or similar rights; and in general to exercise in respect to any investment the unrestricted rights of a personal owner, including voting in person and granting proxies, discretionary, general, or otherwise.

6.13   Distributions in Kind. In any case in which the Trustees make any grants, payments, or other distribution of Trust assets, to make such grant, payment, or distribution in money or in kind, including undivided interests in any property, or partly in money and partly in kind.

6.14   Environmental Hazards on Trust Property. With respect to any environmental hazards on Trust property:

(a)    To take all appropriate actions to prevent, identify, or respond to actual or threatened violations of any environmental law, rule, or regulation, including

compliance with any federal, state, or local agency or court order directing an assessment, abatement, or cleanup of any environmental hazard.

(b)    To disclaim, in whole or in part, any interests in prope ty for any reason, including but not limited to a concern that such property could cause potential liability under any federal, state, or local environmental law, rule, or regulation.

(c)    To set aside any interests in property which could cause potential liability under any federal, state, or local environmental law, rule, or regulation as a separate trust to be held and administered upon the same terms as those governing the remaining Trust assets.

6.15    Written Instruments. To make, execute, and deliver any and all instruments in writing as shall be necessary or advisable to carry out the flexible administration of the Trust, or for the disposition of any property in Trust; and the Trustees may carry in the Trustees' name(s) without words indicating the trust relationship, or may carry in the name of Trustees' nominee(s) or in a stockbroker's street name, securities or other property requiring or permitting of registration.

6.16    Organize a Nonprofit Corporation. The Trustees shall have the authority and power to form and organize a nonprofit corporation, limited to the Qualified Purposes, which is organized under the laws of any state or under the laws of the United States; such corporation to have the power to administer and control the affairs and property and to carry out the Qualified Purposes of this Trust. The Trustees are authorized and empowered to convey, transfer, and deliver to such corporation all the property and assets to which this Trust may be or become entitled. The charter, bylaws, and other provisions for the organization and management of such corporation and its affairs and property shall be such as the Trustees shall determine, consistent with this Agreement.

6.17    Settlor(s) Intention. Anything in this Agreement to the contrary notwithstanding, it is the intention of the Settlor to create a qualifying charitable trust under Sections 170(b)(1)(A)(viii) and 509(a)(3) of the Code; therefore, no powers, authority, or discretion either granted by this Agreement, by any By-Laws of the Trustees, or by applicable State Law which exceed or are inconsistent with those allowed under Sections 170(b)(1)(A)(viii) and 509(a)(3) of the Code and the Treasury Regulations thereunder are to be possessed or exercised by the Trustees.

## Section 7    Amendment of This Agreement

7.1    Generally. Subject to Section 7.2 below, this Agreement may be amended at any time(s) by a written instrument upon a two-thirds (2 3) vote of the Trustees. Such amendment shall be in writing, signed by the Chairman and the Secretary of the Board, and certified under oath before a notary public.

7.2    Restrictions on Amendment. Notwithstanding Section 7.1 above, no amendment of this Trust shall authorize the Trustees to conduct the affairs of this Trust in any manner or for any purpose contrary to the provisions of Sections 501(c)(3) and

7

509(a)(3) of the Code. Any amendment which purports to allow the Trustees to conduct the affairs of this Trust in any manner or for any purpose contrary to the provisions of Sections 501(c)(3) and 509(a)(3) shall be invalid and void *ab initio*.

7.3    Maintain with Trust Records. Each amendment to this Agreement shall be attached to this original Agreement and shall be maintained with the permanent records of the Trust.

## Section 8    Liability of the Trustees

8.1    No Bond Required. None of the Trustees shall be required to furnish any bond or surety. No Trustee shall be responsible for the acts of omission or commission of any other Trustee or of any predecessor Trustee.

8.2    Limited Liability. The Trustees shall not at any time be held liable for mistake of law or of fact, or of both law and fact, or errors of judgment, or any loss coming to the Trust assets or the Trust or any beneficiary hereunder, or to any other person, except through actual fraud or willful misconduct on the part of the Trustee to be charged. If this provision shall be held invalid as to any class of persons or instances, such fact shall not impair its application to all other classes of persons and instances.

8.3    Indemnification. The Trustees shall be indemnified from all acts of omission and commission to the extent provided in the By-Laws and not prohibited by State Law.

## Section 9    Governing Law, Counterparts and Reliance of Third Parties

9.1    State Law. This Trust has been executed by the Settlor and accepted by the Trustees in the State of Florida, and all questions pertaining to the validity, construction, and interpretation of this Agreement, and the administration of the Trust, shall be determined in accordance with the laws of the State of Florida ("State Law").

9.2    Changing State Law and/or Situs of Trust Assets. Notwithstanding Section 9.1 above, State Law for purposes of the validity, construction, interpretation, and/or administration of the Trust may be changed to those of another state or commonwealth by the Trustees, and/or the situs of Trust assets, all without the necessity of court order or approval.

9.3    Counterparts and Execution in Triplicate. This Trust may be signed in one or more counterparts, each of which shall be deemed an original, and when taken together shall constitute one and the same instrument. In addition, this Agreement shall be executed in triplicate, each of which shall be an original and each of which shall constitute the entire Agreement without reference to or the necessity of producing the other counterparts.

9.4 Notary Acknowledgment Required. This Trust and all amendments thereto must be acknowledged before a notary public and under oath. Any individual or entity may rely on a copy of such notarized documents as fully as if the copy were the original. Any individual or entity may fully rely on any statement of fact or act of omission or commission made by a person or entity, if such statement or act is notarized under oath before a notary public, and if such individual or entity appears from such original documents or a copy of such notarized documents to be a Trustee under this Agreement.

9.5 Reliance. No one dealing with this Trust or a Trustee shall be required to see to the application of anything paid or transferred to or upon the direction of a Trustee.

9.6 Loss of Supporting Organization Status. In the event that this Trust shall become a "private foundation" within the meaning of Section 509 of the Code, then the Trust's income for each taxable year shall be distributed at such time and in such manner as not to subject it to tax under Section 4942 of the Code, and the Trust shall be prohibited from engaging in any act of self-dealing as defined in Section 4941(d) of the Code, from retaining any excess business holdings as defined in Section 4943(c) of the Code, from making any investments in such manner as to subject this Trust to tax under Section 4944 of the Code, and from making any taxable expenditures as defined in Section 4945(d) of the Code, and in all sections of the Code as amended from time to time.

9.7 Gender and Number. Reference in this Trust to any gender includes either masculine or feminine, as appropriate, and reference to any number includes both singular and plural where the context permits or requires.

9.8 Miscellaneous Definitions. All references to the words "include" or "including" mean "including without limitation." The words "will" and "shall" are used interchangeably in this Agreement and mean, unless the context requires otherwise, that the party must take the action indicated; as used in this Agreement, the word "may" means that the party has the discretionary authority to take the action but is not automatically required to do so.

9.9 Headings. Section headings are for reading convenience and should be disregarded in construing this Trust.

*(The remainder of this page is intentionally left blank.)*

IN WITNESS WHEREOF, JASON E. HAVENS, as Settlor, and NCF CORPORATION, as Trustee, have signed and sealed this Agreement as of the date first above set forth.

WITNESSES:                                          SETTLOR:

                                                    JASON E. HAVENS

_~giles i Fraven_                          By: _~—~ E. _____ (SEAL)

_~l/c cuiT_

STATE OF FLORIDA
COUNTY OF OKALOOSA

I, Jason E. Havens, declare to the officer taking my acknowledgment of this instrument, and to the subscribing witnesses, that I signed this instrument as my Trust.

_____
Jason E. Havens

We, Daphne K. Havens and John McDermit, have been sworn by the officer signing below, and declare to that officer on our oaths that the Settlor declared the instrument to be his Trust Agreement and signed it in our presence, and that we each signed the instrument as a witness in the presence of the Settlor and of each other.

_____
Daphne K. Havens

_____
John McDermit

Acknowledged and subscribed before me by the Settlor, Jason E. Havens, who is personally known to me, and sworn to and subscribed before me by the witnesses, Daphne K. Havens and John McDermit, both of whom are personally known to me, all on February 9, 2006.

_Rita M. Bronson_
Notary Public, State of Florida
(Print or Stamp Name, Commission # and Expiration below)

© 2006 - Kathas & Associates, LLC                    10

```
RITA M. BRONSON
MY COMMISSION # DD 455179
EXPIRES: August 28, 2009
Bonded Thru Notary Public Underwriters
```

WITNESS:

TRUSTEE:

NCF CORPORATION

By: _____ (SEAL)

_Gene A. Duff_

STATE OF ~~FLORIDA~~ _Georgia_
COUNTY OF _Fulton_

( the Trustee )

Acknowledged and subscribed before me by ~~the Trustee~~ _David H. Willis_ the
_President_ ~~and on behalf~~ of NCF CORPORATION, who is personally known to
me, and sworn to and subscribed before me by the witnesses, _Gregory L. Sperry_ and
_George A. Duffin_, both of whom are personally known to me, all on February _9th_, 2006.

_Marion A. Edge_
Notary Public, State of ~~Florida~~ _Georgia_
(Print or Stamp Name, Commission # and Expiration below)

My Commission Expires
March 31st, 2006

© 2006 - Kallina & Associates, LLC

## SCHEDULE A

## PARTIAL LIST OF
## QUALIFIED ORGANIZATIONS
## WITHIN THE SUPPORTED CLASS

Alliance Defense Fund, Phoenix, AZ

Campus Crusade for Christ International, Orlando, FL

Church Resource Ministries, Anaheim, CA

Compassion International, Colorado Springs, CO

Crown Financial Ministries, Gainesville, GA

Family Research Council, Holland, MI

Focus on the Family, Colorado Springs, CO

Helping Hands Ministries, Inc, Tallulah Falls, GA

National Christian Foundation, Inc., Atlanta, GA

National Christian Charitable Foundation, Inc., Atlanta, GA

Luis Palau Evangelistic Assn., Portland, OR

Ministry Ventures, Atlanta, GA

New Tribes Mission, Sanford, FL

Operation Mobilization, Tyrone, GA

Prison Fellowship Ministries, Landsdowne, VA

Samaritan's Purse, Boone, NC

The Navigators, Colorado Springs, CO

Young Life, Colorado Springs, CO

## **SCHEDULE B**

This Schedule B is the one referred to in the Agreement dated February ___, 2006, between JASON E. HAVENS, as Settlor, and NCF CORPORATION, as Trustee. The Trustee hereby acknowledges receipt of One Hundred Dollars ($100.00) cash, concurrent with the signing of this Agreement.

TRUSTEE:

NCF CORPORATION

By: _____ (SEAL)

F:\Work\NCF\Documents\NCF Charitable Trust Agreement - final.doc

© 2006 - Karilau & Associates, LLC

13

# VI.

# NCF CHARITABLE TRUST
# BY-LAWS

# NCF CHARITABLE TRUST BY-LAWS
## TABLE OF CONTENTS

| | | |
|---|---|---|
| Section 1 | **Board of Trustees** | 1 |
| 1.1 | Purpose | 1 |
| 1.2 | Function of Trustees | 1 |
| 1.3 | Number of Trustees | 1 |
| 1.4 | Different Classes | 1 |
| 1.5 | Appointment and Tenure of Trustees | 1 |
| 1.6 | Removal of Trustee | 2 |
| 1.7 | Vacancy on Board | 2 |
| 1.8 | Chairman of the Board | 2 |
| 1.9 | Compensation | 2 |
| 1.10 | Committees | 2 |
| | | |
| Section 2 | **Meetings of the Trustees** | 2 |
| 2.1 | Annual Meetings | 2 |
| 2.2 | Special Meetings | 2 |
| 2.3 | Place | 3 |
| 2.4 | Notice of Meetings | 3 |
| 2.5 | Quorum | 3 |
| 2.6 | Conduct of Meetings | 3 |
| 2.7 | Order of Affairs | 3 |
| 2.8 | Voting | 3 |
| 2.9 | Informal Action by Trustees | 4 |
| 2.10 | Telephonic Meetings | 4 |
| | | |
| Section 3 | **Officers** | 4 |
| 3.1 | Election, Tenure and Compensation | 4 |
| 3.2 | Powers and Duties of the President | 5 |
| 3.3 | Powers and Duties of a Vice-President | 5 |
| 3.4 | Powers and Duties of a Secretary | 5 |
| 3.5 | Powers and Duties of a Treasurer | 5 |
| 3.6 | Assistant Secretary | 6 |
| 3.7 | Assistant Treasurer | 6 |
| | | |
| Section 4 | **Liability and Indemnification** | 6 |
| 4.1 | Liability | 6 |
| 4.2 | Indemnification | 6 |
| 4.2.1 | Indemnification of Trustees and Officers | 6 |
| 4.2.2 | Indemnification of Expenses Incurred by Agent or Employee Who Successfully Defends Himself or Herself | 7 |
| 4.2.3 | Non-Exclusive Right | 7 |
| 4.2.4 | Incorporation of State Law | 7 |
| 4.2.5 | No Indemnification for Matters Resulting in Private Inurement | 7 |

## NCF CHARITABLE TRUST BY-LAWS
### TABLE OF CONTENTS

| | | |
|---|---|---|
| 4.3 | Bonds | 8 |
| | | |
| Section 5 | **Bank Accounts and Loans** | **8** |
| 5.1 | Bank Accounts | 8 |
| 5.2 | Loans | 8 |
| | | |
| Section 6 | **Miscellaneous Provisions** | **9** |
| 6.1 | Books and Records | 9 |
| 6.2 | Fiscal Year | 9 |
| 6.3 | Notices | 9 |
| 6.4 | Amendment of By-Laws | 9 |
| 6.5 | Substitution of Qualified Organizations | 10 |
| 6.6 | Definition of Independent | 10 |
| 6.7 | Conflicts | 10 |
| 6.8 | Governing Law | 10 |
| 6.9 | Headings | 10 |
| 6.9 | Counterparts | 10 |

## NCF CHARITABLE TRUST
## BY-LAWS

By written agreement dated February $\underset{\wedge}{G^{th}}$, 2006 ("Agreement"), JASON E. HAVENS, of Okaloosa County, Florida, the settlor ("Settlor"); and NCF CORPORATION, a Florida not-for-profit corporation, exempt from taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended from time to time ("Code"), and qualified as a public charity under Section 509(a)(3)(A) of the Code, and its successor(s) and assign(s), as trustee(s) ("Trustees"), created NCF CHARITABLE TRUST ("Trust"). This Trust is organized and is to be operated exclusively for charitable, religious, and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively the "Qualified Purposes") of the class of organizations defined in the Trust which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code (collectively the "Qualified Organizations") and which supports and promotes Christian evangelism, edification, and stewardship, including but not limited to those organizations specified on Schedule A of the Trust (all of such organizations collectively being the "Supported Class").

#### Section 1    Board of Trustees

1.1     Purpose. Pursuant to Section 5.1 of the Agreement, these By-Laws are adopted by the Trustees to proscribe rules for their governance and functioning. These By-Laws are intended to supplement and complement the Agreement and to work in conjunction therewith.

1.2     Function of Trustees. The affairs of the Trust shall be managed under the direction of its Board of Trustees ("Board"). At no time shall the Board be constituted as to be controlled directly or indirectly by one or more disqualified persons, as defined in Section 4946 of the Code, other than foundation managers and other than one or more organizations described in Section 509(a)(1) or (2) of the Code.

1.3     Number of Trustees. The number of Trustees of the Trust shall be not less than one (1) nor more than twenty-five (25), as determined by the Board at its annual meeting.

1.4     Different Classes. By amendment to these By-Laws, the Board may divide the Trustees into different classes and may delegate rights, duties, and authority to one or more classes, to the exclusion, if the Board desires, of another class or other classes.

1.5     Appointment and Tenure of Trustees. Except as may be specifically provided below to the contrary, the Trustees shall be appointed each year at the annual meeting of the Board, and shall hold office until the annual meeting of the Board next succeeding their appointment and thereafter until their respective successors

have been duly appointed. Trustees shall be appointed by NATIONAL CHRISTIAN CHARITABLE FOUNDATION, INC. ("Appointor").

1.6     Removal of Trustee. Any Trustee may be removed from office with or without cause by the Appointor.

1.7     Vacancy on Board. In the case of any vacancy on the Board, the Appointor may appoint a Trustee to fill such vacancy.

1.8     Chairman of the Board. The Trustees shall elect a chairman ("Chairman") to preside at all meetings of the Board at which the chairman is present, and the chairman shall be an ex-officio member of all standing committees. The Chairman shall exercise such powers as may be assigned by the Board and shall be subject to the control of the Board.

1.9     Compensation. Each Trustee shall be entitled to receive reimbursement from the Trust for expenses incurred in attending any meeting of the Board. In general, the Trustees shall not receive any stated or annual salary for their services; provided, however, that the Board may fix a sum to be allowed for attendance at each of its meetings and such sum may be payable, in the Board's discretion, even if a meeting is adjourned because a quorum is not present. Nothing in these By-Laws shall be construed to preclude any Trustee from serving the Trust as an independent contractor or in any other capacity and receiving compensation therefor.

1.10    Committees. The Board may appoint from among its members an Executive Committee. In addition to the Executive Committee, the Board may appoint by resolution such committee(s) as it may deem appropriate, and may grant such committee(s) the right to exercise the powers of the Board. Such committee(s) shall have all the powers delegated by the Board except for the power to direct distribution of Trust assets. Each committee may fix rules of procedure for its affairs. A majority of the members of a committee shall constitute a quorum for the transaction of matters before it and the act of a majority of those present at a meeting at which a quorum is present shall be the act of the committee.

## Section 2    Meetings of the Trustees

2.1     Annual Meetings. The annual meeting of the Board for the transaction of its affairs shall be held in January, or on such other day as shall be set by the Board.

2.2     Special Meetings. Special meetings of the Board may be called at any time for any purpose by the Chairman of the Board, the President, or a majority of the Board, and must be called by the secretary of the Board upon the request in writing of at least twenty-five percent (25%) of the Trustees. Such call and/or request shall state the purpose(s) of the meeting. Matters coming before the

2 2014 v r rout u & Associates, LLC                    2

Board at a special meeting shall be confined to the purpose(s) stated in the notice of the meeting.

2.3      Place. Meetings of the Board shall be held at the principal office of the Trust, unless otherwise designated by the Board.

2.4      Notice of Meetings. Written notice of each meeting of the Board shall be mailed, postpaid, by the secretary of the Board to each Trustee at his or her last known post office address, as it appears on the books of the Trust, at least ten (10) days before the meeting. Each notice shall state the place, day, and hour at which the meeting is to be held and, in the case of any special meeting, shall state briefly the purpose(s) thereof. No failure to give notice or irregularity in such notice shall affect the validity of the proceedings at such meeting. Notwithstanding the foregoing provisions, each person entitled to notice may waive such notice by signing a waiver of notice which is filed with the records of meetings of the Board or by being present at the meeting in person.

2.5      Quorum. The presence of Trustees comprising a majority vote of all Trustees shall constitute a quorum at meetings of the Board. In the absence of a quorum, the meeting may be adjourned from time to time by a majority vote of the Trustees present or represented, without any notice other than by announcement at the meeting, until a quorum is present. At any resumption of an adjourned meeting at which a quorum is present, any matters may be transacted which might have been transacted if the meeting had been held as originally called.

2.6      Conduct of Meetings. Meetings of the Board shall be presided over and chaired by the Chairman of the Board or, in his or her absence, by the President or, in his or her absence, by a chairman to be elected at the meeting. The Secretary of the Trust or, in his or her absence, any Assistant Secretary shall act as secretary of such meetings or, if none of such officers is present, the chairman shall appoint a person to act as secretary of the meeting.

2.7      Order of Affairs. All meetings of the Board shall be conducted in the following order: (a) call to order; (b) proof of the due calling of the meeting; (c) presentation of the oral or written certification of the person who mailed the notice of the meeting, which certification shall be deemed conclusive proof of service; (d) reading and approval or disapproval of the minutes of the most recent meeting of the Board; (e) presentation of reports of officers and committees; (f) notice of appointment of Trustees; (g) review of unfinished matters; (h) presentation of new matters; and (i) adjournment.

2.8      Voting. Except as otherwise specifically provided to the contrary herein, all elections, resolutions, and other matters requiring a vote of the Trustees shall be had and all questions shall be decided by the affirmative vote of a majority of all votes entitled to be cast thereon at a duly constituted meeting of the Trustees; and

where these By-Laws require a two-thirds (2/3) vote, it shall mean the affirmative vote of at least two-thirds (2/3) of all votes entitled to be cast thereon at a duly constituted meeting of the Trustees.

2.9 Informal Action by Trustees. Any action required or permitted to be taken at a meeting of the Board, or of any committee thereof, may be taken without a meeting, if a unanimous written consent setting forth the action so taken is filed with the minutes of the Board or committee and is signed by each Trustee or committee member entitled to vote on the subject matter of the action so taken.

2.10 Telephonic Meetings. Any meeting of the Board, or of any committee thereof, may be conducted without the physical presence of a quorum of the Trustees (or committee members) if a quorum of the Trustees (or committee members) is present in person and/or by telephone, so long as all individuals who are present in person or by telephone may telephonically hear one another

## Section 3    Officers

3.1 Election, Tenure, and Compensation. The Trustees shall have the power to adopt rules and ordinances for conducting their affairs as necessary and convenient to accomplish the Qualified Purposes of the Trust. Pursuant to this power, the Trustees may elect officers, subject to the control and direction of the Board, to run the day-to-day affairs of the Trust. Each year, the Trustees may elect a President, one or more Vice-Presidents, a Secretary, and a Treasurer; one or more assistants to the foregoing officers; and/or such other officers as the Board may consider necessary for the proper conduct of the affairs of the Trust. A person may hold more than one office of the Trust, but may not serve concurrently as both President and Secretary. An individual who holds more than one office may not act in more than one capacity to execute, acknowledge, or verify any instrument required to be executed, acknowledged, or verified by more than one officer.

The election of an individual as an officer and the terms and conditions of employment and continued employment of each officer shall be determined by the Board. Assuming officers are elected, the officers shall be elected by the Board at their annual meeting or, whenever a vacancy requires, at a special meeting called for that purpose. In the event that any office shall not be filled by the Board or, once filled, subsequently becomes vacant, then such office and all references thereto in these By-Laws shall be deemed inoperative unless and until such office is filled in accordance with the provisions of these By-Laws. Any officer may be removed from his or her position with or without cause by a two-thirds (2/3) vote of the Board.

3.2 Powers and Duties of the President. The President shall have general charge and control of all the Trust's affairs and properties. The President may sign and

execute, in the name of the Trust, all authorized deeds, mortgages, bonds, contracts, or other instruments, except in cases in which the signing and execution thereof shall have been expressly delegated by law, the Trust instrument, these By-Laws, or the Board to some other officer or agent of the Trust. The President shall preside at all meetings of the Board in the absence of the Chairman of the Board or in the event of a vacancy in such office, and shall be an ex-officio member of all standing committees of the Board. In general, the President shall have the powers and duties of supervision and management generally incident to the office of president and such other duties as may be assigned by the Board, and shall be subject to the control of the Board.

3.3      Powers and Duties of a Vice-President. The Board may elect and appoint a Vice-President or more than one Vice-President. Any Vice-President may sign and execute, in the name of the Trust, all authorized deeds, mortgages, bonds, contracts, or other instruments, except in cases in which the signing and execution thereof shall have been expressly delegated by law, the Trust instrument, these By Laws, or the Board to some other officer or agent of the Trust. In case of the absence or disability of the President, or at the President's request, the duties of the President may be performed by any Vice-President, and the taking of any action by any Vice-President in lieu of the President shall be conclusive evidence of the absence or disability of the President. Each Vice-President shall have such other powers and perform such other duties as may be assigned by the Board and/or the President, and shall be subject to the control of the Board and the President.

3.4      Powers and Duties of a Secretary. The Secretary shall give, or cause to be given, notice of all meetings of the Board and all other notices required by law or these By-Laws; provided that if the Secretary fails to do so for any reason, such notice may be given by any person directed to do so by the President or by those Trustees upon whose written request the meeting is called as provided in these By-Laws. The Secretary shall record all proceedings of the Board meetings and of any committees of the Board in the books provided for that purpose, and shall be custodian of the books, records, and seal of the Trust. The Secretary shall witness all documents on behalf of the Trust, the execution of which are duly authorized. In general, the Secretary shall have the powers and duties generally incident to the office of secretary and such other duties as may be assigned by the Board and/or the President, and shall be subject to the control of the Board and the President.

3.5      Powers and Duties of a Treasurer. The Treasurer shall have custody and charge of, and be responsible for, all funds, securities, receipts, and disbursements of the Trust and shall keep full and accurate records of receipts and disbursements in books belonging to the Trust. The Treasurer shall deposit, or cause to be deposited, all monies and other valuables in the name and to the credit of the Trust in such depositories as shall be designated by the Board or the President,

Police building association, LC                                    5

The Treasurer shall disburse the funds of the Trust as may be ordered by the President or the Board, taking proper vouchers for such disbursements. When requested, the Treasurer shall render to the President and the Board an account of all of his or her transactions as Treasurer and of the financial condition of the Trust. In general, the Treasurer shall have the powers and duties generally incident to the office of treasurer and such other duties as may be assigned by the Board and/or the President, and shall be subject to the control of the Board and the President.

3.6    Assistant Secretary. The Board may elect and appoint an Assistant Secretary or more than one Assistant Secretary. In the case of the absence or disability of the Secretary, the duties of the office of Secretary shall be performed by any Assistant Secretary, and the taking of any action by an Assistant Secretary in lieu of the Secretary shall be conclusive evidence of the absence or disability of the Secretary. Each Assistant Secretary shall have such other powers and perform such other duties as may be assigned by the Board and/or the President, and shall be subject to the control of the Board and the President.

3.7    Assistant Treasurer. The Board may elect and appoint an Assistant Treasurer or more than one Assistant Treasurer. In case of the absence or disability of the Treasurer, the duties of the office of Treasurer shall be performed by any Assistant Treasurer, and the taking of any action by an Assistant Treasurer in lieu of the Treasurer shall be conclusive evidence of the absence or disability of the Treasurer. Each Assistant Treasurer shall have such other powers and perform such other duties as may be assigned by the Board and/or the President, and shall be subject to the control of the Board and the President.

## Section 4    Liability and Indemnification

4.1    Liability. No Trustee shall be responsible for the acts of omission or commission of any other Trustee or of any predecessor Trustee. The Trustees shall not at any time be held liable for mistake of law or of fact, or of both law and fact, or errors of judgment, or any loss coming to the Trust assets or the Trust or any beneficiary hereunder, or to any other person, except through actual fraud or willful misconduct on the part of the Trustee to be charged. If this provision shall be held invalid as to any class of persons or instances, such fact shall not impair this provision's application to all other classes of persons and instances.

4.2    Indemnification. The Trust shall indemnify a Trustee or officer and may, but shall not be required to, indemnify a Trust employee or agent in connection with a suit or proceeding as permitted in this Section 4.2.

4.2.1    Indemnification of Trustees and Officers. The Trust shall indemnify every Trustee made a party to a proceeding because such individual is or was a Trustee, as a matter of right, against all liability incurred by such individual in connection

6

with the proceeding; provided that it is determined in the specific case that indemnification of such individual is permissible in the circumstances because such individual has met the standard of conduct for indemnification specified in Section 607.0850 of the Florida Statutes. The Trust shall pay for or reimburse the reasonable expenses incurred by a Trustee in connection with any such proceeding in advance of final disposition thereof. The Trust shall indemnify a Trustee who is wholly successful, on the merits or otherwise, in the defense of any such proceeding, as a matter of right, against reasonable expenses incurred by the individual in connection with the proceeding without the requirement of a determination as set forth in the first sentence of this Section 4.2. Upon demand by a Trustee for indemnification or advancement of expenses, as the case may be, the Trust shall expeditiously determine whether the Trustee is entitled thereto in accordance with this Section 4.2. Every individual who is or was an officer of the Trust shall be indemnified, and shall be entitled to an advancement of expenses, to the same extent as if such individual is or was a Trustee. The indemnification provided under this Section 4.2 shall be applicable to any proceeding arising from acts or omissions occurring before or after the adoption of this Section 4.2.

4.2.2    Indemnification of Expenses Incurred by Agent or Employee Who Successfully Defends Himself or Herself. To the extent that an employee or agent successfully defended himself or herself on the merits or otherwise in any proceeding, including a proceeding brought by or on behalf of the Trust, such indemnification against expenses actually and reasonably incurred in relation to the proceeding may include, fees, judgments, fines, and amounts paid in settlement, and shall only be granted in each specific case upon a determination and authorization by the majority of a quorum of the Board.

4.2.3    Non-Exclusive Right. Nothing contained in this Section 4 shall limit or preclude the exercise or be deemed exclusive of any right under the law, by contract or otherwise, relating to indemnification of or advancement of expenses to any individual who is or was a Trustee, officer, employee, and/or agent of the Trust, or the ability of the Trust otherwise to indemnify or advance expenses to any such individual. It is the intent of this Section 4 to provide indemnification to Trustees and officers to the fullest extent now or hereafter permitted by law. Therefore, indemnification shall be provided in accordance with any theory upon which a claim is made, including but not limited to negligence, breach of duty, mismanagement, corporate waste, breach of contract, breach of warranty, strict liability, violation of the Employee Retirement Income Security Act of 1974, as amended, or violation of any other state or federal laws.

4.2.4    Incorporation of State Law. Notwithstanding the fact that these By-Laws apply to a trust, any word(s) used in this Section 4 shall have the same meaning as provided under the applicable section of the Florida Business Corporation Act,

except that where the term "corporation" is used in such statute, the term "trust" shall be substituted therefor.

4.2.5    No Indemnification for Matters Resulting in Private Inurement. Notwithstanding any other provision of this Section 4, there shall be no indemnification with respect to matters as to which indemnification would result in inurement of net earnings of the Trust to the benefit of any individual within the meaning of Section 501(c)(3) of the Code.

4.3    Bonds. The Board may require any officer, agent, or employee of the Trust to give a bond to the Trust, conditioned upon the faithful discharge of his or her duties, with one or more sureties and in such amount and with such companies as may be satisfactory to the Board. No bond or surety shall be required of a Trustee.

## Section 5    Bank Accounts and Loans

5.1    Bank Accounts. The Board shall designate such Trustees, officers, or agents of the Trust who shall have the authority to deposit any funds of the Trust in such bank(s) or financial institution(s) as shall be designated by the Board. The Board shall also designate such Trustees, officers, or agents who may withdraw any or all of the funds of the Trust in any bank or financial institution, upon checks, drafts, or other instruments or orders for the payment of money which are drawn against the account or in the name or on behalf of the Trust and made or signed by such Trustees, officers, or agents. Each bank or financial institution holding funds of the Trust is authorized to accept, honor, cash, and pay, without limit as to amount, all checks, drafts, or other instruments or orders for the payment of money, when drawn, made or signed by Trustees, officers, or agents so designated by the Board until written notice of the revocation by the Board of the authority of such Trustees, officers, or agents has been received by such bank or financial institution. The secretary of the Board shall certify to the bank(s) or financial institution(s) holding funds of the Trust the signature(s) of the Trustees, officers, or agents of the Trust so designated by the Board to draw against such funds. If the Board fails to designate the persons having authority to sign checks, drafts, or other instruments or orders for the payment of money, as provided in this Section 5.1, all such checks, drafts, and other instruments or orders for the payment of money shall be signed by the President and countersigned by the Secretary, Treasurer, an Assistant Secretary, or an Assistant Treasurer of the Trust.

5.2    Loans. The Board shall designate such Trustees, officers, or agents who shall have authority to make loans and advances or to establish other forms of credit for the Trust from such banks, trust companies, institutions, corporations, firms, or persons designated by the Board; and as security for the repayment of such loans, advances, or other forms of credit, to assign, transfer, endorse, and deliver, either originally or in addition to or substitution for any or all stocks, bonds, rights, and

interests of any kind in or to stocks or bonds, certificates of such rights or interests, deposits, accounts, documents covering merchandise, bills and accounts receivable, and other commercial paper and evidences of debt at any time held by the Trust; and as evidence of such loans, advances, or other forms of credit, to make, execute, and deliver one or more notes, acceptances, or written obligations of the Trust on such terms and with such provisions as to the security, sale, or disposition thereof as such Trustees, officers, or agents shall deem proper; and also to sell to, or discount or rediscount with, such banks, trust companies, financial institutions, corporations, firms, or persons any and all commercial paper, bills receivable, acceptances, and other instruments and evidences of debt at any time held by the Trust, and to that end to endorse, transfer, and deliver the same. The Secretary of the Board shall certify to each such bank, trust company, financial institution, corporation, firm, or person the signatures of such designated Trustees, officers, or agents; and each such bank, trust company, institution, corporation, firm, or person is authorized to rely upon such certification until written notice of the revocation by the Board of the authority of such Trustees, officers, or agents has been received by such bank, trust company, institution, corporation, firm, or person.

## Section 6    Miscellaneous Provisions

6.1    Books and Records. The Trust shall keep accurate and complete books and records of its accounts and transactions and minutes of the proceedings of its Board and of its committees. The books and records of the Trust may be in written form or in any other form which can be converted within a reasonable time into written form for visual inspection. Minutes shall be recorded in written form but may be maintained in the form of a reproduction.

6.2    Fiscal Year. The fiscal year of the Trust shall end on the last day of December.

6.3    Notices. Whenever under the provisions of these By-Laws notice is required to be given to any Trustee or officer, it shall be given by a communication in writing; signed by the party sending such communication; and delivered by certified mail, postpaid, return receipt requested, personally hand delivered, a dated receipt being obtained, or via facsimile transmission, with written confirmation obtained. The effective date of such notice shall be deemed to be the date of mailing of such certified mail, the actual date of hand delivery or facsimile transmission, or the date such facsimile is transmitted. Any Trustee or officer may waive any notice required to be given under these By-Laws.

6.4    Amendment of By-Laws. Anything in these By-Laws to the contrary notwithstanding, these By-Laws or any provision hereof may be altered, amended, or supplemented only upon proper notice and upon a two-thirds (2/3) vote. Notwithstanding the Trustees' ability to amend these By-Laws, no amendment shall authorize the Trustees or any officer to conduct the affairs of the

Trust in any manner or for any purpose contrary to the provisions of Sections 501(c)(3) and 509(a)(3) of the Code. Any amendment which purports to allow the Trustees or officers to conduct the affairs of the Trust in any manner or for any purposes contrary to the provisions of Sections 501(c)(3) and 509(a)(3) of the Code shall be invalid and void *ab initio*.

6.5     Substitution of Qualified Organizations. In the event that a Qualified Organization within the Supported Class is no longer qualified as a tax-exempt organization under Sections 501(c)(3), 170(b)(1)(A)(i)-(vi), or 509(a)(2) of the Code, the Trustees may substitute such organization as specifically described in Treasury Regulation Section 1.509(a)-4(d)(4)(i).

6.6     Definition of Independent. The term "independent" person or entity shall mean any person or entity other than the Settlors of the Trust who or which are not "Related or Subordinate Parties" who are subservient to the wishes of the Settlor of the Trust, and as further defined in Section 674(c) of the Code. Related or Subordinate Parties as used herein shall be defined pursuant to the definition in Section 672(c) of the Code. Neither an attorney, accountant, nor similar professional who is an "independent contractor" (and not an employee), nor a business partner nor a business associate shall be deemed to be a Related or Subordinate Party solely by reason of the fact that he or she renders professional advice to the Settlors of the Trust or to this Trust or is in business with the Settlors.

6.7     Conflicts. In the event that there should be a conflict between the Agreement and these By-Laws, the Agreement shall control.

6.8     Governing Law. These By-Laws shall be governed by the same law of the state or commonwealth as shall govern the Agreement.

6.9     Headings. Section headings are for reading convenience only and should be disregarded in construing this Trust.

6.10    Counterparts. These Bylaws may be signed in one or more counterparts, each of which shall be deemed an original, and when taken together shall constitute one and the same instrument. In addition, this Agreement shall be executed in triplicate, each of which shall be an original and each of which shall constitute the entire Agreement without reference to or the necessity of producing the other counterparts.

*(The remainder of this page is intentionally left blank.)*

The above By-Laws were adopted as of the date first above set forth.

NCF CORPORATION, Trustee

By: _____ (SEAL)

F:\Work\NCF Documents\NCF Charitable Trust By-Laws - Boulder

# VII.

**Attachment to Form 1023**
**Part IV – Narrative Description of Activities**

**NCF Charitable Trust**
**EIN: 20-4326440**

NCF Charitable Trust (the "Trust") is organized and is to be operated exclusively for charitable, religious, and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively the "Qualified Purposes") of the class of organizations defined in the Trust Agreement (which is attached hereto and incorporated by reference herein as Tab V) which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code (collectively the "Qualified Organizations") and which supports and promotes Christian evangelism, edification, and stewardship, including but not limited to those organizations specified on Schedule A of the Trust Agreement (all of such organizations collectively being the "Supported Class"). For the purposes of this Form 1023 Application, a Supported Organization shall mean a Qualified Organization within the Trust's Supported Class.

See the By-Laws, attached hereto as Tab VI, and the Cover Letter, attached hereto as Tab III, for a specific analysis of the Trust's qualification under Section 509(a)(3).

F:\Work\NCF Documents\NCF Charitable Trust - 1023 ATTACHMENT TO FORM 1023-Part IV - Narrative.doc

**Attachment to Form 1023**
**Part V, Lines 1a, 3a and 3b**

**NCF Charitable Trust**
**EIN:  20-4326440**

| Trustee: | Annual Compensation | Hours Worked/Week |
|---|---|---|
| NCF Corporation | | |
| 1408 North West Shore Blvd | None | n/a |
| Suite 504 | | |
| Tampa, FL  33622 | | |

**Officers:**

| | | |
|---|---|---|
| President | | |
| David H. Wills | None | 5 |
| 1100 Johnson Ferry Road, NE, Ste 900 | | |
| Atlanta, GA  30342 | | |
| | | |
| Vice-President | | |
| Terrill Parker | None | 5 |
| 1100 Johnson Ferry Road, NE, Ste 900 | | |
| Atlanta, GA  30342 | | |
| | | |
| Secretary/Treasurer | | |
| Gregory L. Sperry | None | 10 |
| 1100 Johnson Ferry Road, NE, Ste 900 | | |
| Atlanta, GA  30342 | | |

**Employees:**

| | | |
|---|---|---|
| Administrative Assistant | | |
| To Be Hired | $20,000 | 40 |
| 1408 North West Shore Blvd, Suite 504 | | |
| Tampa, FL  33622 | | |

Mr. Wills, Mr. Parker and Mr. Sperry are all officers, directors, and/or employees of the National Christian Charitable Foundation, Inc. ("NCCF"), which is one of the charitable organizations which the Trust will support.  Their compensation from NCCF is determined and approved by the Board of Directors of NCCF.

**Attachment to Form 1023**
**Part V, Line 5**

**NCF Charitable Trust**
**EIN: 20-4326440**

The Trust has adopted both a Conflicts of Interest Policy and a Confidentiality Policy. Copies of both documents are attached.

The Board of Trustees adopted these Policies by Resolution on February 20, 2006.

F:\Work NCF\Documents\NCF Charitable Trust - 1023 ATTACHMENT TO FORM 1023-Part V - conflicts.doc

# NCF CHARITABLE TRUST
## Conflict Of Interest Policy

## Article I
### Purpose

The purpose of the conflict of interest policy is to protect the interests of NCF Charitable Trust ("Foundation") when it is contemplating entering into a transaction or arrangement that might benefit the private interest of an officer, member of the Board of Trustees ("Board"), or committee member of the Foundation, or might result in a possible "excess benefit transaction" as set forth in the Internal Revenue Code and the Regulations thereunder. This policy is intended to supplement but not replace any applicable state and federal laws governing conflict of interest applicable to nonprofit and charitable organizations.

## Article II
### Definitions

1. **"Interested Person"** - Any member of the Board, officer, or member of a committee who has a direct or indirect financial interest in a transaction or arrangement (described below) is an "Interested Person."

2. **Financial Interest**

A person has a financial interest if the person, directly or indirectly, through business, investment, or family, has:

a.  An ownership or investment interest in any entity with which the Foundation has a transaction or arrangement,

b.  A compensation arrangement with the Foundation or with any entity or individual with which the Foundation has a transaction or arrangement, or

c.  A potential ownership or investment interest in, or compensation arrangement with, any entity or individual with which the Foundation is negotiating a transaction or arrangement.

A financial interest is a conflict of interest only if the Board decides that a conflict of interest exists.

3. **Compensation**

Compensation includes direct and indirect remuneration as well as gifts or favors that are substantial.

## Articles III
## Procedures

### 1. **Duty to Disclose**
In connection with any actual or possible conflict of interest, an Interested Person must disclose the existence of the financial interest and be given the opportunity to disclose all material facts to the Board.

### 2. **Determining Whether a Conflict of Interest Exists**
After disclosure of the financial interest and all material facts, and after any discussion with and presentation by the Interested Person, the Interested Person shall leave the Board meeting while the Board determines whether a conflict of interest exists and the Board votes upon the matter.

### 3. **Procedures for Addressing the Conflict of Interest**
   a. The Chairman of the Board shall, if appropriate, appoint a disinterested person or committee to investigate alternatives to the proposed transaction or arrangement.
   b. After exercising due diligence, the Board shall determine whether the Foundation can obtain with reasonable efforts a more advantageous transaction or arrangement from a person or entity that would not give rise to a conflict of interest.
   d. If such a more advantageous transaction or arrangement is not reasonably possible under the circumstances, the Board shall determine by a majority vote of the disinterested trustees whether the transaction or arrangement is in the Foundation's best interest, for its own benefit, and whether it is fair and reasonable. In conformity with the above determination, the Board shall make its decision as to whether to enter into the transaction or arrangement.

### 4. **Violations of the Conflicts of Interest Policy**
   a. If the Board has reasonable cause to believe the Interested Person has failed to disclose actual or possible conflicts of interest, it shall inform the Interested Person of the basis for such belief and afford the Interested Person an opportunity to explain the alleged failure to disclose.
   b. If, after hearing the Interested Person's response and after making further investigation as warranted by the circumstances, the Board determines the Interested Person has failed to disclose an actual or possible conflict of interest, it shall take appropriate disciplinary and corrective action.

## Article IV
## Records of Proceedings

The minutes of the Board shall contain:
   a. The names of the persons who disclosed or otherwise were found to have a financial interest in connection with an actual or possible conflict of interest, the nature of the financial interest, any action taken to determine whether a conflict of interest was present, and the Board's decision as to whether a conflict of interest in fact existed.

Page 2 of 4

b.  The names of the persons who were present for discussions and votes relating to the transaction or arrangement, the content of the discussion, including any alternatives to the proposed transaction or arrangement, and a record of any votes taken in connection with the proceedings.

## Article V
## Compensation

a.  A member of the Board or of any committee who receives direct or indirect compensation from the Foundation for services is precluded from voting on matters pertaining to that member's compensation.
b.  All direct or indirect compensation or remuneration to an Interested Person for services rendered must be approved to the extent possible, IN ADVANCE, by the majority vote of members of the Board who are not related to the Interested Person by blood, by business dealings, or by interlocking board/business relationships (where the Interested Person votes on the compensation of another member of the Board).  The purpose of this paragraph is to invoke a favorable presumption under Federal Tax Regulations that the compensation is reasonable.  A voting member of any committee whose jurisdiction includes compensation matters and who receives direct or indirect compensation from the Foundation for services is precluded from voting on matters pertaining to that member's compensation.
c.  No voting member of the Board or any committee whose jurisdiction includes compensation matters and who receives direct or indirect compensation from the Foundation, either individually or collectively, is prohibited from providing information to any committee regarding compensation.

## Article VI
## Statements of Acknowledgment

Each member of the Board and each member of every committee shall sign a statement which affirms such person:
a.  Has received a copy of the Conflict Of Interest Policy,
b.  Has read and understands the Policy,
c.  Has agreed to comply with the Policy, and
d.  Understands the Foundation is charitable and in order to maintain its federal tax exemption it must engage primarily in activities which accomplish one or more of its tax-exempt purposes.

## Article VII
## Periodic Reviews

To ensure the Foundation operates in a manner consistent with charitable purposes and does not engage in activities that could jeopardize its tax-exempt status, periodic reviews shall be conducted and shall include at a minimum the following subjects:

a. Whether compensation arrangements and benefits are reasonable, based on competent survey information, and the result of arm's length bargaining.
b. Whether partnerships, joint ventures, and arrangements with management organizations conform to the Foundation's policies, are properly recorded, reflect reasonable investment or payments for goods and services, further charitable purposes and do not result in inurement, impermissible private benefit, or in an excess benefit transaction.

Periodic reviews of compensation of the Foundation's President, CEO, CFO, and treasurer must occur at least annually, absent a fixed employment contract which spans a greater period of time. In addition, period reviews of such officers' compensation must occur upon the hiring of such officer, and/or the modification of such officer's compensation.

## Article VIII
## Use of Outside Experts

When conducting the periodic reviews as provided for in Article VII, the Foundation may, but need not, use outside advisors. If outside experts are used, their use shall not relieve the Board of its responsibility for ensuring periodic reviews are conducted.

## Article IX
## Audits

To the extent that the Foundation has gross revenue in excess of $2 Million during any calendar year, the Board shall make arrangements for an audited financial statement to be performed under the supervision of an "Audit Committee" of the Board. The Audit Committee: (i) shall be appointed by the Board, (ii) may not include anyone having a material financial interest in any entity doing business with the Foundation, and (iii) may not include any employee or the President, CEO, CFO, or treasurer of the Foundation (whether paid or unpaid). The Audit Committee may consist of as few as one member. No more than 49% of the members of the Audit Committee can also be members of the Finance Committee of the Board. The Audit Committee: (a) shall recommend to the Board the hiring or termination of the independent auditor; (b) shall review the financial affairs of the Foundation and determine whether to accept the audit; (c) shall assure that nonaudit services performed by the auditors conform to standards for independence; and (d) shall approve such nonaudit services.

## NCF CHARITABLE TRUST
## CONFLICTS OF INTEREST AND CONFIDENTIALITY POLICY

Those persons entrusted with overseeing the operations of the NCF Charitable Trust (the "Trust") must maintain the highest ethical standards and avoid actual or apparent conflicts between their personal interests and those of the Trust to the extent such transactions are not in the best interest of the Trust. This policy statement is intended to provide specific guidance to all trustees and officers of the Trust in maintaining the foregoing standards. This statement, as may be amended or supplemented from time to time by the Board of Trustees, applies and shall be disseminated to all trustees as the official statement of the Trust's general policy.

### Best Interest of the Trust.

In the course of the Trust's charitable undertakings and in the conduct of its business, all trustees and officers acknowledge their fiduciary obligation in the management and use of the Trust's assets, and their obligation to discharge their duties in a manner that is in the best interest of the Trust with the care that an ordinary prudent person in a like position would exercise in similar circumstances.

### General Ethical Standard.

All trustees and officers shall at all times act with decorum, honesty, integrity, and in accordance with the highest ethical standards. A trustee's or officer's relationship with the Trust shall not be used in any way that will inure to the personal benefit of a trustee or officer if such actions are not in the best interest of the Trust.

### Specific Conflicts of Interest Policies.

Certain outside business, professional, and other activities and relationships may interfere with the ability of a trustee or officer to perform official or assigned duties or may otherwise create a conflict with their interests and the interest of the Trust. Therefore, the Board of Trustees of the Trust hereby establishes the following general guidelines (i) for trustees and officers having a relationship with any organization or person that involves a financial interest in, or holding of a position of authority with, any party conducting business with the Trust; and (ii) for trustees or officers engaging or seeking to engage in outside business, financial, and professional activities, either with or without compensation:

A trustee shall not, directly or indirectly, engage in any outside business, financial, or professional transaction or other activity which conflicts with the interests of the Trust, which might reflect adversely upon the Trust, or which otherwise interferes with the trustee's ability to discharge his or her duties fully. Any possible conflict of interest must be discussed with the Board of Trustees immediately upon recognition of the existence of a potential conflict.

The Trust may engage in certain transactions in the normal course of business with entities of which a trustee or officer has a financial interest (a "conflicted trustee" or "conflicted officer"). Any financial interest, or any position as a fiduciary, officer, trustee, advisor or consultant, or any similar position of influence or authority, by a trustee or an officer in an entity with which the Trust does business, or is considering doing business, must be disclosed to the members

NCF Charitable Trust
Conflict of Interest and Confidentiality Policy
Adopted by Board of Trustees February 20, 2006
Page 1 of 3

of the Board of Trustees (other than the conflicted trustee) at the earliest possible time following recognition of the existence of such relationship.

The non-conflicted trustees should evaluate the potential conflicting transaction to determine if the financial benefit to the conflicted trustee or conflicted officer, whether direct or indirect, might exert an influence on the conflicted trustee's or conflicted officer's judgment if such trustee or officer were called upon to vote on the transaction or otherwise make a decision to consummate such transaction. When a conflict or potential conflict exists, the conflicted trustee or officer shall (i) abstain from voting or acting upon the pertinent item, (ii) withdraw from the meeting, and (iii) abstain from participating in or informally influencing the decision-making process except to provide factual information upon request.

Trustees and officers are prohibited from representing the Trust or otherwise participating in any transaction with any organization or concern in which the trustee or officer, or a family member of the trustee or officer, has a relationship of the type described above, except with the prior written approval of the Board of Trustees after disclosure of all relevant information.

If a conflicted trustee or conflicted officer fails to disclose to the Board of Trustees the existence of, and facts relating to, an existing or potential beneficial financial interest, or if the non-conflicted trustees have no knowledge of such transaction, or if the vote of a conflicted trustee or conflicted officer was necessary for the authorization of such contract or transaction at a meeting of the Board of Trustees at which it was authorized, the Trust may avoid the contract or transaction, unless the party or parties thereto affirmatively establish that the contract or transaction was fair and reasonable as to the Trust at the time it was authorized by the Board of Trustees.

Except for ordinary and customary tokens of nominal value, participation in a business lunch or other meal paid for by another party on an appropriate occasion and under appropriate circumstances, or inclusion in entertainment for a group of persons where the presence of the trustees is clearly appropriate and consistent with the Trust's objectives, acceptance by a trustee or officer of any gift, entertainment, or other personal favors from any party that does or seeks to do business with the Trust, including prospective donors, may present an undesirable appearance of impropriety or may be inappropriate under specific circumstances. If in doubt about any such matter, a trustee should seek the advice of the Board of Trustees.

## Confidentiality

Trustees and officers must at all times maintain confidentiality of the Trust's affairs, proprietary business information, and other internal procedures, personnel information, and the like that are not publicly disclosed through the various reports prepared or filed by the Trust pursuant to applicable legal requirements. Even with respect to information that might be ascertained through research of publicly available materials, trustees and officers must determine whether discussion or disclosure is appropriate under the immediate circumstances.

NCF Charitable Trust
Conflict of Interest and Confidentiality Policy
Adopted by Board of Trustees February 20, 2006
Page 2 of 3

### Annual Disclosure

Within 30 days after the beginning of each calendar year, each trustee and officer of the Trust shall file with the Secretary of the Trust a statement listing for the individual trustee/officer and his or her spouse, all trusteeships, membership, or other relationships which might cause the individual to be biased or otherwise partial in any business or charitable matter involving the Trust.

This statement of policy shall in no way be construed to limit whatsoever any conflicts of interest provision (whether or not it is explicitly designated as such) in the Trust Agreement or Bylaws of the Trust. Each trustee and officer is responsible for reviewing the Trust Agreement and Bylaws of the Trust, and the conflicts of interest provisions thereof are hereby incorporated by reference.

F: Work\NCF Documents\NCF Charitable Trust - 1023 Conflict of Interest Policy - Official Version.doc

NCF Charitable Trust
Conflict of Interest and Confidentiality Policy
Adopted by Board of Trustees February 20, 2006
Page 3 of 3

**Attachment to Form 1023**
**Part V, Lines 7, 8 and 9**

**NCF Charitable Trust**
**EIN: 20-4326440**

The Trust will enter into a standard service agreement with its Trustee, NCF Corporation, a Section 509(a)(3) Type 1 supporting organization, to provide management, administrative, investment management and various other services to the Trust. The Trust will ensure that the fee for those services and terms of any such arrangements will be reasonable and competitive.

The Trust does not anticipate compensating any officer or Trustee.

F: Work NCF Documents NCF Charitable Trust - 1023 ATTACHMENT TO FORM 1023-Part V - line 7, 8 and 9 doc

**Attachment to Form 1023**
**Part VI , Line 1b**

**NCF Charitable Trust**
**EIN: 20-4326440**

The Trust is organized and is to be operated exclusively for charitable, religious, and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively the "Qualified Purposes") of the class of organizations defined in the Trust Agreement (which is attached hereto and incorporated by reference herein as Exhibit V) which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code (collectively the "Qualified Organizations") and which supports and promotes Christian evangelism, edification, and stewardship, including but not limited to those organizations specified on Schedule A of the Trust Agreement (all of such organizations collectively being the "Supported Class").

F:\Work\NCF Documents-NCF Charitable Trust - 1023 ATTACHMENT TO FORM 1023-Part VI -benefits.doc

**Attachment to Form 1023**
**Part VIII, Line 4**

**NCF Charitable Trust**
**EIN: 20-4326440**

The Trust's fundraising program will be based on direct mailing, internet solicitation, telephone solicitation, and personal outreach through related ministries. The Trust may send a solicitation letter to prospective donors. The mailing list for the solicitation will include donors and prospective donors of Qualified Organizations within the Trust's Supported Class. In addition, the Trust anticipates establishing a web site which will at a minimum provide services to its donors, information to the general public and solicit for charitable contributions. The Trust anticipates that fundraising will be nationwide.

The Trust will enter into a Donor Advised Fund agreement with donors. Attached is a sample proposed Memorandum of Understanding which the Trust would use to document such an arrangement.

F: Work NCF Documents NCF Charitable Trust - 1023 ATTACHMENT TO FORM 1023-Part VIII -Line 4.doc

THE_____FUND
## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding is made on this _____ day of _____, between _____ ("Donors"), with a mailing address of _____, and NCF CHARITABLE TRUST ("NCF") with its principal offices at 1408 North West Shore Blvd., Suite 504, Tampa, Florida 33622-2774.

1. The Donors intend on making a complete and irrevocable gift of property as will be specifically described on Schedule A, which is attached hereto and made a part hereof by this reference, to NCF, which will be held and administered by NCF under the following terms and conditions.

2. At such time as the Donors make, and NCF accepts, such gift, a fund will be established on the books of NCF to be known as THE _____ FUND ("Fund").

3. The Fund will include the gift made today, such other property as from time to time may be transferred to NCF by the Donors, or the survivor of them, for inclusion in the Fund, such property as from time to time may be received by NCF from any other source and accepted by it for inclusion in the Fund, and all income and other proceeds from the foregoing property.

4. The Fund will be the property of NCF; it will not be deemed a separate trust fund held by it in a trustee capacity; and it may be commingled with other funds held by NCF. NCF will have ultimate authority and control over all property in the Fund, including any income earned by the Fund.

5. The Fund may be used only for the Qualified Purposes of NCF and its Supported Organizations, a list of which is attached hereto as Schedule B and made a part hereof by this reference. Twenty-five percent (25%) of each dollar of income and principal withdrawn from the Fund shall be used by NCF for administration and grant-making purposes and seventy-five percent (75%) shall be used for the support of Qualified Organizations within NCF's Supported Class.

6. The Trustees of NCF shall designate distributions from the Fund of income and principal. The Trustees will consider several criteria in determining the amount and timing of such distributions, with special weight given to donor advisory requests. Other criteria include recommendations from the Trustees and independent investigation by NCF staff evaluating the donor advisory requests to ensure that they are consistent with the needs and programs most deserving of support by NCF. Requests for distribution may be made by the Donors, and the survivor of them, from time to time, orally or in writing.

Upon the death of the surviving Donor, requests for distribution may be made by any one of the Donors' children, from time to time, orally or in writing.

The children's names are: _____. It is agreed and understood that the final discretion as to the use of the Fund income and principal shall be that of NCF's Trustees; any income and principal remaining in the Fund at the death of the surviving child may be withdrawn in the sole discretion of NCF and used for its general purposes.

7.    It is intended that the Fund be an integral part of NCF and not a separate trust. Nothing in this Memorandum of Understanding shall affect the status of NCF as an organization described in Code Section 501(c)(3) and as an organization which is not a private foundation within the meaning of Code Section 509(a)(3). It is the express intention of NCF that the Fund be organized and operated to comply with Treasury Regulation Section 1.170A-9(e)(10-13). Nevertheless, both NCF and the Donors recognize that gifts from the Fund to other organizations may be treated as indirect gifts from the Donors. This Memorandum shall be interpreted in a manner consistent with the foregoing intention and so as to conform to the requirements of the foregoing provisions of the federal tax laws and any regulations issued pursuant thereto. NCF is authorized to amend this Memorandum to conform to the provisions of any applicable law or government regulation in order to carry out the foregoing intention. References herein to provisions of the Internal Revenue Code of 1986 shall be deemed references to the corresponding provisions of any future Internal Revenue law.

IN WITNESS WHEREOF, the Donors and NCF have signed this Memorandum of Understanding the date first above written.

Date: _____    _____ (Signed)

_____ (Printed)

Date: _____    _____ (Signed)

_____ (Printed)

ACCEPTED:

NCF CHARITABLE TRUST

By: _____ (Signed)

_____ (Printed)    Date: _____

# Schedule A of Donor Advised Fund

THE_____FUND
MEMORANDUM OF UNDERSTANDING

Item No. Date of Transfer Description

Receipt of the above described assets is hereby acknowledged this _____ day of
_____.

NCF CHARITABLE TRUST

By:_____

# Schedule B of Donor Advised Fund

NCF Charitable Trust is a supporting organization committed to supporting the charitable tax-exempt purposes of a class of organizations which support and promote Christian evangelism, edification, and stewardship, and which qualify as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code ("Supported Organizations"). The Supported Organizations may include but are not limited to the following:

**Alliance Defense Fund,** Phoenix, AZ

**Campus Crusade for Christ International,** Orlando, FL

**Church Resource Ministries,** Anaheim, CA

**Compassion International,** Colorado Springs, CO

**Crown Financial Ministries,** Gainesville, GA

**Family Research Council,** Holland, MI

**Focus on the Family,** Colorado Springs, CO

**Helping Hands Ministries, Inc.,** Tallulah Falls, GA

**National Christian Foundation, Inc.,** Atlanta, GA

**National Christian Charitable Foundation, Inc.,** Atlanta, GA

**Luis Palau Evangelistic Assn.,** Portland, OR

**Ministry Ventures,** Atlanta, GA

**New Tribes Mission,** Sanford, FL

**Operation Mobilization,** Tyrone, GA

**Prison Fellowship Ministries,** Landsdowne, VA

**Samaritan's Purse,** Boone, NC

**The Navigators,** Colorado Springs, CO

**Young Life,** Colorado Springs, CO

**Attachment to Form 1023**
**Part VIII, Lines 7, 11, 13 and 15**

**NCF Charitable Trust**
**EIN: 20-4326440**

The Trust anticipates that NCF Corporation, a Section 509(a)(3) Type 1 supporting organization, will act as Trustee, and provide administrative and management services to the Trust. Several of the directors and officers of NCF Corporation are also officers of the Trust. It is expected that no donor to the Trust or NCF Corporation, or member of the donor's family or business associate, will become a Trustee or officer of the Trust or NCF Corporation.

The Trust intends to be the recipient of non-cash gifts such as S-stock, LLC interests, and partnership interests, but has not yet accepted any contributions of the type described in Part VIII, Line 11.

First and foremost, no gifts will be accepted by the Trust unless the donor clearly understands that charitable intent and promotion of the Trust's charitable purposes must be the primary purpose of any gift. The Trust will not allow potential donors to impose any legal conditions on the Trust's acceptance of such contributions, other than those conditions which are advisory in nature pursuant to a donor advised fund agreement, as set forth above in the Attachments.

The Trust plans to make grants, loans or other distributions to one or more Supported Organizations, as named in its governing instrument. The Trust's activities will be conducted and funds will be distributed by the Trustee, who will meet at least annually to review and approve all decisions and information with respect to such distributions. The Trustee will keep records to account for each contribution made to the Trust, as well as the subsequent management, liquidation and distribution of such gift to a Supported Organization. The Trustee will also ensure that any Supported Organization receiving a grant, loan or other distribution from the Trust is a 501(c)(3) organization in good standing, that its mission statement is consistent with the Trust's Qualified Purposes, and that it falls within the Supported Class.

The Trust anticipates having a close relationship with several of its Supported Organizations, including National Christian Charitable Foundation, Inc. ("NCCF"), the primary Supported Organization. In addition, NCF Corporation, a Section 509(a)(3) Type 1 supporting organization, will serve as Trustee of the Trust. The officers and directors of NCCF and NCF Corporation may also serve as officers of the Trust.

As to Line 8 of Part VIII, it is expected that the Trust will be gifted S Corporation stock and LLC and partnership interests, but no joint ventures are anticipated. Likewise, as to Line 10 of Part VIII, the Trust may be gifted interests in intellectual property.

All non-cash gifts to the Trust will be liquidated and turned into cash as soon as reasonably possible so that the Trust can fulfill its charitable mission.

F:\Work\NCF\Documents\NCF Charitable Trust - 1023\ATTACHMENT TO FORM 1023-Part VIII - Line 7, 11, 13 and 15.doc

Attachment to Form 1023
Part IX , Line 15

NCF Charitable Trust
EIN: 20-4326440

The amounts listed on line 15 represent grants to supported organizations as follows:

| | | 2006 | | 2007 | | 2008 |
|---|---|---|---|---|---|---|
| Alliance Defense Fund | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Campus Crusade for Christ International | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Church Resource Ministries | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Compassion International | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Crown Financial Ministries | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Family Research Council | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Focus on the Family | S | 1,650,000 | S | 2,725,000 | S | 3,925,000 |
| Helping Hands Ministries, Inc. | S | 990,000 | S | 1,635,000 | S | 2,355,000 |
| National Christian Foundation, Inc | S | 9,900,000 | S | 16,350,000 | S | 23,550,000 |
| National Christian Charitable Foundation, Inc. | S | 9,900,000 | S | 16,350,000 | S | 23,550,000 |
| Luis Palau Evangelistic Assn. | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Ministry Ventures | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| New Tribes Mission | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Operation Mobilization | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Prison Fellowship Ministries | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Samaritan's Purse | S | 990,000 | S | 1,635,000 | S | 2,355,000 |
| The Navigators | S | 660,000 | S | 1,090,000 | S | 1,570,000 |
| Young Life | S | 1,650,000 | S | 2,725,000 | S | 3,925,000 |
| | S | 33,000,000 | S | 54,500,000 | S | 78,500,000 |

*Specific gifts, contributions, distributions and expenses have yet to be determined. All numbers are estimates and projections only.*

**Attachment to Form 1023**
**Schedule D, Section I, Line 1**

**NCF Charitable Trust**
**EIN: 20-4326440**

<u>Identifying Information about the Supported Organizations</u>

The Trust is organized and is to be operated exclusively for charitable, religious, and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively the "Qualified Purposes") of the class of organizations defined in the Trust Agreement (which is attached hereto and incorporated by reference herein as Tab V) which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code (collectively the "Qualified Organizations") and which supports and promotes Christian evangelism, edification, and stewardship, including but not limited to the following organizations (all of such organizations collectively being the "Supported Class"):

**Alliance Defense Fund,** Phoenix, AZ

**Campus Crusade for Christ International,** Orlando, FL

**Church Resource Ministries,** Anaheim, CA

**Compassion International,** Colorado Springs, CO

**Crown Financial Ministries,** Gainesville, GA

**Family Research Council,** Holland, MI

**Focus on the Family,** Colorado Springs, CO

**Helping Hands Ministries, Inc.,** Tallulah Falls, GA

**National Christian Foundation, Inc.,** Atlanta, GA

**National Christian Charitable Foundation, Inc.,** Atlanta, GA

**Luis Palau Evangelistic Assn.,** Portland, OR

**Ministry Ventures,** Atlanta, GA

**New Tribes Mission,** Sanford, FL

**Operation Mobilization,** Tyrone, GA

**Prison Fellowship Ministries,** Landsdowne, VA

**Samaritan's Purse,** Boone, NC

**The Navigators,** Colorado Springs, CO

**Young Life,** Colorado Springs, CO

Copies of the determination letter for each of these charities follow this page.

INTERNAL REVENUE SERVICE
DISTRICT DIRECTOR
P. O. BOX 2508
CINCINNATI, OH  45201

Date: APR 22 1998

ALLIANCE DEFENSE FUND INC
7819 E GREENWAY RD STE 8
SCOTTSDALE, AZ  85260-1719

DEPARTMENT OF THE TREASURY

Employer Identification Number:
  54-1660459
DLN:
  17053087837013
Contact Person:
  D. A. DOWNING
Contact Telephone Number:
  (513) 241-5199
Our Letter Dated:
  July 1993
Addendum Applies:
  No

Dear Applicant:

   This modifies our letter of the above date in which we stated that you
would be treated as an organization that is not a private foundation until the
expiration of your advance ruling period.

   Your exempt status under section 501(a) of the Internal Revenue Code as an
organization described in section 501(c)(3) is still in effect. Based on the
information you submitted, we have determined that you are not a private
foundation within the meaning of section 509(a) of the Code because you are an
organization of the type described in section 509(a)(1) and 170(b)(1)(A)(vi).

   Grantors and contributors may rely on this determination unless the
Internal Revenue Service publishes notice to the contrary. However, if you
lose your section 509(a)(1) status, a grantor or contributor may not rely on
this determination if he or she was in part responsible for, or was aware of,
the act or failure to act, or the substantial or material change on the part of
the organization that resulted in your loss of such status, or if he or she
acquired knowledge that the Internal Revenue Service had given notice that you
would no longer be classified as a section 509(a)(1) organization.

   If we have indicated in the heading of this letter that an addendum
applies, the addendum enclosed is an integral part of this letter.

   Because this letter could help resolve any questions about your private
foundation status, please keep it in your permanent records.

   If you have any questions, please contact the person whose name and
telephone number are shown above.

                              Sincerely yours,

                              C. Ashley Bullard

                              District Director

                                                    Letter 1050 (DO/CG)

03/05/2003 18 17 FAX 513 783 3758          IE/GE CINTI                                  ☐002/004

Internal Revenue Service

**Department of the Treasury**

P.O. Box 2508
Cincinnati, OH 45201

Date: March 1, 2003

Person to Contact:
   Mr Mason 31-07424
   Customer Service Specialist
Toll Free Teluphone Number:
   8:00 A.M. to 8:30 P.N. EST
   877-829-5500
Fax Number:
   513-283-3756
Federal Identification Number:
   95-6006173

Campus Crusade for Christ, Inc
100 Lake Hart Dr
Orlando FL 32832-0100

Dear Sir or Madam:

This is in response to your fax dated February 13, 2003 regarding the organization's name We have updated our records to reflect the name change as indicated above

In January 1959, we issued a determination letter that recognized your organization as exempt from federal income tax under section 501(c)(3) of the internal Revenue Code. That letter is still in effect

Based on the information submitted, we recognized the subordinates named on the list your organization supplied as exempt from federal income tax under section 501(c)(3) of the Code. Also, we classified those subordinates as organizations that are not private foundations because they are organizations of the type described in sections 509(a)(1) and 170(b)(1)(A)(i) of the Code

Donors may deduct contributions to your organization's subordinates as provided in section 170 of the Code Bequests, legacies, devises, transfers or gifts to the subordinates or for their use are deductible for federal estate and gift tax purposes if they meet the applicable provisions of sections 2055 2106, and 2522 of the Code

Your organization and its subordinates are not required to file federal income tax returns unless subject to the tax on unrelated business income under section 511 of the Code. If subject to this tax, the organization must file an income tax return on Form 990-T, Exempt Organization Business Income Tax Return. In this letter we are not determining whether any of your organization or its subordinates' present or proposed activities are unrelated trade or business as defined in section 513 of the Code

Unless specifically excepted, your organization and its subordinates are liable for taxes under the Federal Insurance Contributions Act (social security taxes) on remuneration of $100 or more paid each employee during a calendar year This does not apply, however, if your organization makes or has made a timely election under section 3121(w) of the Code to be exempt from such tax. Your organization and its subordinates are not liable for the tax imposed under the Federal Unemployment Tax Act (FUTA)

Each year, at least 90 days before the end of your organization's annual accounting period, please compile and forward the following information:

P.1/3                    To:Kallina Law                    FEB-14-2006 15:15 From:

Feb 14 00 11:11a          CRM                    714 770 0100              p.2

**Internal Revenue Service**
District Director

Department of the Treasury

Date:      DEC 2 9 1980

LA: EO: 2773
**Employer Identification Number:**
95-3523150
**Accounting Period Ending:**
June 30
**Foundation Status Classification:**
170(b)(1)(A)(vi) and 509(a)(1)
**Advance Ruling Period Ends:**
June 30, 1982
**Person to Contact:**
B. Brewer
**Contact Telephone Number:**
(213) 688-4889

▷ Church Resource Ministries
200 N. Russell
Fullerton, California  92633

Dear Applicant:

Based on information supplied, and assuming your operations will be as stated in your application for recognition of exemption, we have determined you are exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code.

Because you are a newly created organization, we are not now making a final determination of your foundation status under section 509(a) of the Code. However, we have determined that you can reasonably be expected to be a publicly supported organization described in section 170(b)(1)(A)(vi) and 509(a)(1).

Accordingly, you will be treated as a publicly supported organization, and not as a private foundation, during an advance ruling period. This advance ruling period begins on the date of your inception and ends on the date shown above.

Within 90 days after the end of your advance ruling period, you must submit to us information needed to determine whether you have met the requirements of the applicable support test during the advance ruling period. If you establish that you have been a publicly supported organization, you will be classified as a section 509(a)(1) or 509(a)(2) organization as long as you continue to meet the requirements of the applicable support test. If you do not meet the public support requirements during the advance ruling period, you will be classified as a private foundation for future periods. Also, if you are classified as a private foundation, you will be treated as a private foundation from the date of your inception for purposes of sections 507(d) and 4940.

Grantors and donors may rely on the determination that you are not a private foundation until 90 days after the end of your advance ruling period. If you submit the required information within the 90 days, grantors and donors may continue to rely on the advance determination until the Service makes a final determination of your foundation status. However, if notice that you will no longer be treated as a section 170(b)(1)(A)(vi) organization is published in the Internal Revenue Bulletin, grantors and donors may not rely on this determination after the date of such publication. Also, a grantor or donor may not rely on this determination if he or she was in part responsible for, or was aware of, the act or failure to act that resulted in your loss of section 170(b)(1)(A)(vi) status, or acquired knowledge that the Internal Revenue Service had given notice that you would be removed from classification as a section 170(b)(1)(A)(vi) organization.

P.O. Box 2350, Los Angeles, Calif.  90053          (over)

Letter 1045(DO) (6-77)

Feb 14 00 11:11a    crm                      714 770 0100              p.9

If your sources of support, or your purposes, character, or method of operation change, please let us know so we can consider the effect of the change on your exempt status and foundation status. Also, you should inform us of all changes in your name or address.

Generally, you are not liable for social security (FICA) taxes unless you file a waiver of exemption certificate as provided in the Federal Insurance Contributions Act. If you have paid FICA taxes without filing the waiver, you should call us. You are not liable for the tax imposed under the Federal Unemployment Tax Act (FUTA).

Organizations that are not private foundations are not subject to the excise taxes under Chapter 42 of the Code. However, you are not automatically exempt from other Federal excise taxes. If you have any questions about excise, employment, or other Federal taxes, please let us know.

Donors may deduct contributions to you as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for Federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

You are required to file Form 990, Return of Organization Exempt from Income Tax, only if your gross receipts each year are normally more than $10,000. If a return is required, it must be filed by the 15th day of the fifth month after the end of your annual accounting period. The law imposes a penalty of $10 a day, up to a maximum of $5,000, when a return is filed late, unless there is reasonable cause for the delay.

You are not required to file Federal income tax returns unless you are subject to the tax on unrelated business income under section 511 of the Code. If you are subject to this tax, you must file an income tax return on Form 990-T. In this letter, we are not determining whether any of your present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

You need an employer identification number even if you have no employees. If an employer identification number was not entered on your application, a number will be assigned to you and you will be advised of it. Please use that number on all returns you file and in all correspondence with the Internal Revenue Service.

Because this letter could help resolve any questions about your exempt status and foundation status, you should keep it in your permanent records.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

Sincerely yours,

W. H. Cornett

District Director

S.M.

David M. Long, u/PA

Letter 1045(DO) (6-77)

Feb 14 00 11:11a                    crm                    714 773 0100          p.4

**Internal Revenue Service**
District Director

Department of the Treasury

Date:  NOV 3 0 1984

Our Letter Dated: December 29, 1980

Person to Contact: L. Bakion(GL)

Contact Telephone Number: (213)688-4389

Church Resource Ministries
P.O. Box 322
Fullerton, CA  92632

Dear Applicant:

This modifies our letter of the above date in which we stated that
you would be treated as an organization which is not a private foundation
until the expiration of your advance ruling period.

Based on the information you submitted, we have determined that you
are not a private foundation within the meaning of section 509(a) of the
Internal Revenue Code, because you are an organization of the type described
in section _509(a)(1)*_____. Your exempt status under section 501(c)(3) of the
code is still in effect.

Grantors and contributors may rely on this determination until the
Internal Revenue Service publishes notice to the contrary. However, a
grantor or a contributor may not rely on this determination if he or she was
in part responsible for, or was aware of, the act or failure to act that
resulted in your loss of section _509(a)(1)*_____ status, or acquired
knowledge that the Internal Revenue Service had given notice that you would
be removed from classification as a section _509(a)(1)*_____ organization.

Because this letter could help resolve any questions about your private
foundation status, please keep it in your permanent records.

If you have any questions, please contact the person whose name and
telephone number are shown above.

Sincerely yours,

*and section: 170(b)(1)(A)(vi)*

_Loti Carier_
District Director

P.O. Box 2350, Los Angeles, Calif. 30053

Letter 1050 (DO) (7-77)

Address any reply to:

Phone contact:  B. Jackson
Phone number:   886-4630

# Department of the Treasury

### District Director

## Internal Revenue Service

| Date: | In reply refer to: |
|---|---|
| July 2, 1980 | EM:CS:DRU:NO:bj |

> Compassion International, Inc.
> 7774 Irving Park Road
> Chicago, Illinois  60634

**Date of Exemption:**  1-13-59
**Internal Revenue Code Section:**  501(c)(3)
Federal Identification number  36-2423707

Gentlemen:

Thank you for submitting the information shown below. We have made it a part of your file.

The changes indicated do not adversely affect your exempt status and the exemption letter issued to you continues in effect.

Please let us know about any future change in the character, purpose, method of operation, name or address of your organization. This is a requirement for retaining your exempt status.

Thank you for your cooperation.

Sincerely yours,

for Leo H. Moy
    Supervisor

| Item Changed | From | To |
|---|---|---|
| Name | Compassion, Incorporated | Compassion International, Incorporated |

| Post-it® Fax Note  7671 | Date 20 JUL 99  pages ► 1 |
|---|---|
| To Judy Padgett | From Deb Fuson |
| Co./Dept. NCCF | Co. Compassion Int'l. |
| Phone # | Phone # 800-336-7676 |
| Fax # | Fax # |

Letter 976 (DO) (7-77)

Internal Revenue Service

Department of the Treasury

P. O. Box 2508
Cincinnati, OH 45201

Date: July 9, 2001

Person to Contact:
   John Kennedy ID 31-07297
   Customer Service Representative
Toll Free Telephone Number:
   8:00 a.m. to 9:30 p.m. EST
   877-829-5500
Fax Number:
   513-263-3756
Federal Identification Number:
   58-1260812

Crown Financial Ministries, Inc.
601 Broad St. S. E.
Gainesville, GA 30501

Dear Sir or Madam:

This letter is in response to your request for a copy of your organization's determination letter. This letter will take the place of the copy you requested.

Our records indicate that a determination letter issued in October 1976 granted your organization exemption from federal income tax under section 501(c)(3) of the Internal Revenue Code. That letter is still in effect.

Based on information subsequently submitted, we classified your organization as one that is not a private foundation within the meaning of section 509(a) of the Code because it is an organization described in sections 509(a)(1) and 170(b)(1)(A)(vi).

This classification was based on the assumption that your organization's operations would continue as stated in the application. If your organization's sources of support, or its character, method of operations, or purposes have changed, please let us know so we can consider the effect of the change on the exempt status and foundation status of your organization.

Your organization is required to file Form 990, Return of Organization Exempt from Income Tax, only if its gross receipts each year are normally more than $25,000. If a return is required, it must be filed by the 15th day of the fifth month after the end of the organization's annual accounting period. The law imposes a penalty of $20 a day, up to a maximum of $10,000, when a return is filed late, unless there is reasonable cause for the delay.

All exempt organizations (unless specifically excluded) are liable for taxes under the Federal Insurance Contributions Act (social security taxes) on remuneration of $100 or more paid to each employee during a calendar year. Your organization is not liable for the tax imposed under the Federal Unemployment Tax Act (FUTA).

Organizations that are not private foundations are not subject to the excise taxes under Chapter 42 of the Code. However, these organizations are not automatically exempt from other federal excise taxes.

Donors may deduct contributions to your organization as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to your organization or for its use are deductible for federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

-2-

Crown Financial Ministries, Inc.
58-1260812

Your organization is not required to file federal income tax returns unless it is subject to the tax on unrelated business income under section 511 of the Code. If your organization is subject to this tax, it must file an income tax return on the Form 990-T, Exempt Organization Business Income Tax Return. In this letter, we are not determining whether any of your organization's present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

The law requires you to make your organization's annual return available for public inspection without charge for three years after the due date of the return. If your organization had a copy of its application for recognition of exemption on July 15, 1987, it is also required to make available for public inspection a copy of the exemption application, any supporting documents and the exemption letter to any individual who requests such documents in person or in writing. You can charge only a reasonable fee for reproduction and actual postage costs for the copied materials. The law does not require you to provide copies of public inspection documents that are widely available, such as by posting them on the Internet (World Wide Web). You may be liable for a penalty of $20 a day for each day you do not make these documents available for public inspection (up to a maximum of $10,000 in the case of an annual return).

Because this letter could help resolve any questions about your organization's exempt status and foundation status, you should keep it with the organization's permanent records.

If you have any questions, please call us at the telephone number shown in the heading of this letter.

This letter affirms your organization's exempt status.

Sincerely,

John E. Ricketts, Director, TE/GE
Customer Account Services

02/14/06  TUE 15:07 FAX 770 536 7228        CROWN FINANCIAL MINISTR                    @002

# Secretary of State
## Corporations Division
### 315 West Tower
### #2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

DOCKET NUMBER : 003210507
CONTROL NUMBER: H503835
EFFECTIVE DATE: 11/15/2000
REFERENCE      : 0045
PRINT DATE     : 12/01/2000
FORM NUMBER    : 611

STEPHEN H. KING
GAMMON & GRANGE, P.C.
8280 GREENSBORO DR., 7TH FLOOR
MCLEAN, VA  221023807

## CERTIFICATE OF NAME CHANGE AMENDMENT

I, Cathy Cox, the Secretary of State and the Corporations Commissioner of the State of Georgia, do hereby certify under the seal of my office that

### CHRISTIAN FINANCIAL CONCEPTS, INC.
### A DOMESTIC NONPROFIT CORPORATION

has filed articles of amendment in the Office of the Secretary of State changing its name to

### CROWN FINANCIAL MINISTRIES, INC.

and has paid the required fees as provided by Title 14 of the Official Code of Georgia Annotated. Attached hereto is a true and correct copy of said articles of amendment.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on the date set forth above.



Cathy Cox
Secretary of State

**Internal Revenue Service**
**District Director**

Date:  AUG 03 1994

Christian Financial Concepts, Inc.
601 Broad Street, SE
Gainsville, GA 30501

**Department of the Treasury**
ATLANTA DISTRICT

Form Number:
   990
Exemption under section 501(c)(3)
   of the Internal Revenue Code

Person to Contact:
   PATRICIA BRUCE
Contact Telephone Number:
   (404)593-7491
Period Ended:
   December 31, 1991

Dear Sir or Madam:

     Our recent examination of the above information return disclosed that
your organization continues to qualify for exemption from Federal income tax.
Accordingly, the return is accepted as filed.

     However, the following item(s) were noted:

As a result of our examination, your classification as an organization
which is not a private foundation has been changed from section 509(a)(2)
to section 170(b)(1)(A)(vi) and 509(a)(1) because the support you have
received is the type described in section 170(b)(1)(A)(vi).

There is no change in your liability for the unrelated business income tax
imposed by Code section 511.

          We will appreciate your compliance with the above requirements.

                              Sincerely,

                              NELSON A. BROOKE
                              District Director

02/14/06  TUE 15:22 FAX 770 536 7226     CROWN FINANCIAL MINISTR                    ☑006

Internal Revenue Service                    Department of the Treasury

                                            Washington, DC 20224

EIN:  Application made
DO :  58

Christian Financial Concepts, Inc.          Person to Contact:
4730 Darlene Way                            G. Elaine
Tucker, Georgia    30084                    Telephone Number:
                                            202-964-3844
                                            Refer Reply to:
                                            E:EO:T:R:2-4
                                            Date:     OCT 2 9 1976

                        Key District:  Atlanta
                Accounting Period Ending:  December 31
                       Form 990 Required:  [X] Yes  [ ] No
          Foundation Status Classification:  Section 509(a)(2)
               Advance Ruling Period Ends:  December, 1978

Gentlemen:

     Based on the information supplied, and assuming your operations
will be as stated in your application for recognition of exemption,
we have determined you are exempt from Federal income tax under sec-
tion 501(c)(3) of the Internal Revenue Code.

     Because you are a newly created organization, we are not now
making a final determination of your foundation status under section
509(a) of the Code. However, we have determined that you can rea-
sonably be expected to be a publicly supported organization of the
type described in section 509(a)(2) of the Code.

     Accordingly, you will be treated as a publicly supported or-
ganization, and not as a private foundation, during an advance
ruling period. This advance ruling period. This advance ruling
period begins on the date of your inception and ends on the date
referred to above.

     Within 90 days after the end of your advance ruling period,
you must submit to your key District Director information needed
to determine whether you have met the requirements of the appli-
cable support test during the advance ruling period. If you estab-
lish that you have been a publicly supported organization, you will
be classified as a section 509(a)(1) or 509(a)(2) organization so
long as you continue to meet the requirements of the applicable sup-
port test. If, however, you do not meet the public support require-
ments during the advance ruling period, you will be classified as a
private foundation for future periods. Also, in the event you are
classified as a private foundation, you will be treated as a private
foundation from the date of your inception for purposes of sections
507(d) and 4940.

-2-

Grantors and donors may rely on the determination that you are not a private foundation until 90 days after the end of your advance ruling period. In addition, if you submit the required information within the 90 days, grantors and donors may continue to rely on the advance determination until the Service makes a final determination of your foundation status. However, if notice that you will no longer be treated as a section 509(a)(2) organization is published in the Internal Revenue Bulletin, grantors and donors may not rely on this determination after the date of such publication. Also, a grantor or donor may not rely on this determination if he was in part responsible for, or was aware of, the act or failure to act that resulted in your loss of section 509(a)(2) status, or acquired knowledge that the Internal Revenue Service had given notice that you would be removed from classification as a section 509(a)(2) organization.

Donors may deduct contributions to you as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for Federal state and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

You are not liable for social security (FICA) taxes unless you file a waiver of exemption certificate as provided in the Federal Insurance Contributions Act. You are not liable for the taxes imposed under the Federal Unemployment Tax Act (FUTA).

Organizations that are not private foundations are not subject to the excise taxes under Chapter 42 of the Code. However, you are not automatically exempt from other Federal excise taxes.

If your sources of support, or your purposes, character, or method of operation is changed, you must let your key District Director know so he can consider the effect of the change on your status. Also, you must inform him of all changes in your name or address.

The block checked at the top of this letter shows whether you must file Form 990, Return of Organization Exempt From Income Tax. If the Yes box is checked, you are required to file Form 990 only if your gross receipts each year are normally more than $5,000. If a return is required, it must be filed by the 15th day of the fifth month after the end of your annual accounting period. The law imposes a penalty of $10 a day, up to a maximum of $5,000, for failure to file the return on time.

02/14/06  TUE 15:23 FAX 770 536 7226      CROWN FINANCIAL MINISTR                    ☒008

-3-

You are not required to file Federal income tax returns unless
you are subject to the tax on unrelated business income under section
511 of the Code. If you are subject to this tax, you must file an
income tax return on Form 990-T. In this letter we are not deter-
mining whether any of your present or proposed activities are unre-
lated trade or business as defined in section 513 of the Code.

You need an employer identification number even if you have no
employees. If an employer identification number was not entered on
your application, a number will be assigned to you and you will be
advised of it. Please use that number on all returns you file and
in all correspondence with the Internal Revenue Service.

Sincerely yours,

Milton Cerny

Milton Cerny
Chief, Rulings Section 2
Exempt Organizations
Technical Branch

02/14/06  TUE 13:18 FAX 616 391 5254          FAMILY RESEARCH COUNCIL                               ☒002

INTERNAL REVENUE SERVICE                                DEPARTMENT OF THE TREASURY
DISTRICT DIRECTOR
P. O. BOX 2508
CINCINNATI, OH  45201

Date:  FEB 06 1996
                                             Employer Identification Number:
                                                52-1792772
                                             DLN:
                                                17053010934008
FAMILY RESEARCH COUNCIL INC                  Contact Person:
801 G ST NW                                     D. A. DOWNING
WASHINGTON, DC  20001-3729                   Contact Telephone Number:
                                                (513) 241-5199
                                             Our Letter Dated:
                                                July 1993
                                             Addendum Applies:
                                                No


Dear Applicant:

       This modifies our letter of the above date in which we stated that you
would be treated as an organization that is not a private foundation until the
expiration of your advance ruling period.

       Your exempt status under section 501(a) of the Internal Revenue Code as an
organization described in section 501(c)(3) is still in effect. Based on the
information you submitted, we have determined that you are not a private
foundation within the meaning of section 509(a) of the Code because you are an
organization of the type described in section 509(a)(1) and 170(b)(1)(A)(vi).

       Grantors and contributors may rely on this determination unless the
Internal Revenue Service publishes notice to the contrary. However, if you
lose your section 509(a)(1) status, a grantor or contributor may not rely on
this determination if he or she was in part responsible for, or was aware of,
the act or failure to act, or the substantial or material change on the part of
the organization that resulted in your loss of such status, or if he or she
acquired knowledge that the Internal Revenue Service had given notice that you
would no longer be classified as a section 509(a)(1) organization.

       If we have indicated in the heading of this letter that an addendum
applies, the addendum enclosed is an integral part of this letter.

       Because this letter could help resolve any questions about your private
foundation status, please keep it in your permanent records.

       If you have any questions, please contact the person whose name and
telephone number are shown above.

                                     Sincerely yours,

                                     C. Ashley Bullard

                                     District Director


                                                                    Letter 1050 (DO/CG)

**Internal Revenue Service**
**District Director**

Department of the Treasury
LA:EO:80:12.82

**Date:**  JUN 16 1980

**Our Letter Dated:**
February 14, 1978
**Person to Contact:**
W. E. Pure
**Contact Telephone Number:**
(213) 688-5787

▶ Focus on the Family
735 W. Duarte Road, #302
Arcadia, CA  91006

── Gentlemen:

This modifies our letter of the above date in which we stated that you would be treated as an organization which is not a private foundation until the expiration of your advance ruling period.

Based on the information you submitted, we have determined that you are not a private foundation within the meaning of section 509(a) of the Internal Revenue Code, because you are an organization of the type described in section ___509(a)(2)___. Your exempt status under section 501(c)(3) of the code is still in effect.

Grantors and contributors may rely on this determination until the Internal Revenue Service publishes notice to the contrary. However, a grantor or a contributor may not rely on this determination if he or she was in part responsible for, or was aware of, the act or failure to act that resulted in your loss of section ___509(a)(2)___ status, or acquired knowledge that the Internal Revenue Service had given notice that you would be removed from classification as a section ___509(a)(2)___ organization.

Because this letter could help resolve any questions about your private foundation status, please keep it in your permanent records.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely yours,

W. H. Connett
District Director

P.O. Box 2350, Los Angeles, Calif. 90053

Letter 1050 (I

FEB-14-2005 14:11  FROM: 719 531 3366                    TO:914437971147        P:1/1



CERTIFICATION
PROGRAM

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
PHILADELPHIA, PA 19255

Date: 02/08/2005

Taxpayer: FOCUS ON THE FAMILY
        TIN: 95-3188150
Tax Year: 2005

I certify that, to the best of our knowledge, the above-named entity is an exempt organization under section 501(c) (3) of the U.S. Internal Revenue Code, or a religious or apostolic organization under section 501(d), which is exempt from U.S. taxation under section 501(a), and is a resident of the United States of America for purposes of U.S. taxation.

Daniel J. Nally

Daniel J. Nally
Field Director, Philadelphia Accounts Management Center

Certified for Mexico

Form 6166 Rev. 2-2004
Catalog Number 43149V

02-14-2006 15:16    HELPING HANDS MINISTRIES 7257544547                    PAGE2

DEPARTMENT OF THE TREASURY

INTERNAL REVENUE SERVICE
P. O. BOX 2508
CINCINNATI, OH  45201

Date: MAY 15 2001

HELPING HANDS MINISTRIES INC
PO BOX 337
TALLULAH FALLS, GA  30573

Employer Identification Number:
   58-2266139
DLN:
   17053090953011
Contact Person:
   ERIK FILIAULT              ID# 32393
Contact Telephone Number:
   (877) 829-5500
Our Letter Dated:
   November 1997
Addendum Applies:
   NO

Dear Applicant:

    This modifies our letter of the above date in which we stated that you
would be treated as an organization that is not a private foundation until the
expiration of your advance ruling period.

    Your exempt status under section 501(a) of the Internal Revenue Code as an
organization described in section 501(c)(3) is still in effect. Based on the
information you submitted, we have determined that you are not a private
foundation within the meaning of section 509(a) of the Code because you are an
organization of the type described in section 509(a)(1) and 170(b)(1)(A)(vi).

    Grantors and contributors may rely on this determination unless the
Internal Revenue Service publishes notice to the contrary. However, if you
lose your section 509(a)(1) status, a grantor or contributor may not rely on
this determination if he or she was in part responsible for, or was aware of,
the act or failure to act, or the substantial or material change on the part of
the organization that resulted in your loss of such status, or if he or she
acquired knowledge that the Internal Revenue Service had given notice that you
would no longer be classified as a section 509(a)(1) organization.

    You are required to make your annual information return, Form 990 or
Form 990-EZ, available for public inspection for three years after the later
of the due date of the return or the date the return is filed. You are also
required to make available for public inspection your exemption application,
any supporting documents, and your exemption letter. Copies of these
documents are also required to be provided to any individual upon written or in
person request without charge other than reasonable fees for copying and
postage. You may fulfill this requirement by placing these documents on the
Internet. Penalties may be imposed for failure to comply with these
requirements. Additional information is available in Publication 557,
Tax-Exempt Status for Your Organization, or you may call our toll free
number shown above.

    If we have indicated in the heading of this letter that an addendum
applies, the addendum enclosed is an integral part of this letter.

                                                Letter 1050 (DO/CG)

02-14-2006 15:17    HELPING HANDS MINISTRIES 7067549847                                                    PAGE3

-2-

HELPING HANDS MINISTRIES INC

Because this letter could help resolve any questions about your private foundation status, please keep it in your permanent records.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely yours,

Director, Exempt Organizations

Letter 1050 (DO/CG)

INTERNAL REVENUE SERVICE                          DEPARTMENT OF THE TREASURY
P. O. BOX 2508
CINCINNATI, OH  45201

Date:  DEC 1 1003                    Employer Identification Number:
                                        30-0209280
                                     DLN:
NATIONAL CHRISTIAN FOUNDATION INC       17053294007003
C/O TED DAY JR                       Contact Person:
1100 JOHNSON FERRY RD SUITE 900         WILLIAM C JARVI          ID# 31431
ATLANTA, GA  30342                   Contact Telephone Number:
                                        (877) 829-5500
                                     Accounting Period Ending:
                                        December 31
                                     Form 990 Required:
                                        Yes
                                     Addendum Applies:
                                        No

Dear Applicant:

      Based on information supplied, and assuming your operations will be as
stated in your application for recognition of exemption, we have determined
you are exempt from federal income tax under section 501(a) of the Internal
Revenue Code as an organization described in section 501(c)(3).

      We have further determined that you are not a private foundation within
the meaning of section 509(a) of the Code, because you are an organization
described in section 509(a)(3).

      If your sources of support, or your purposes, character, or method of
operation change, please let us know so we can consider the effect of the
change on your exempt status and foundation status.  In the case of an amend
ment to your organizational document or bylaws, please send us a copy of the
amended document or bylaws.  Also, you should inform us of all changes in your
name or address.

      As of January 1, 1984, you are liable for taxes under the Federal
Insurance Contributions Act (social security taxes) on remuneration of $100
or more you pay to each of your employees during a calendar year.  You are
not liable for the tax imposed under the Federal Unemployment Tax Act (FUTA).

      Since you are not a private foundation, you are not subject to the excise
taxes under Chapter 42 of the Code.  However, if you are involved in an excess
benefit transaction, that transaction might be subject to the excise taxes of
section 4958.  Additionally, you are not automatically exempt from other
federal excise taxes.  If you have any questions about excise, employment, or
other federal taxes, please contact your key district office.

      Grantors and contributors may rely on this determination unless the
Internal Revenue Service publishes notice to the contrary.  However, if you
lose your section 509(a)(3) status, a grantor or contributor may not rely
on this determination if he or she was in part responsible for, or was aware
of, the act or failure to act, or the substantial or material change on the

                                                      Letter  947 (DO/CG)

-2-

NATIONAL CHRISTIAN FOUNDATION INC

part of the organization that resulted in your loss of such status, or if he or she acquired knowledge that the Internal Revenue Service had given notice that you would no longer be classified as a section 509(a)(3) organization.

Donors may deduct contributions to you as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for federal estate and gift tax purposes if they meet the applicable provisions of Code sections 2055, 2106, and 2522.

Contribution deductions are allowable to donors only to the extent that their contributions are gifts, with no consideration received. Ticket purchases and similar payments in conjunction with fundraising events may not necessarily qualify as deductible contributions, depending on the circumstances. See Revenue Ruling 67-246, published in Cumulative Bulletin 1967-2, on page 104, which sets forth guidelines regarding the deductibility, as charitable contributions, of payments made by taxpayers for admission to or other participation in fundraising activities for charity.

In the heading of this letter we have indicated whether you must file Form 990, Return of Organization Exempt From Income Tax. If Yes is indicated, you are required to file Form 990 only if your gross receipts each year are normally more than $25,000. However, if you receive a Form 990 package in the mail, please file the return even if you do not exceed the gross receipts test. If you are not required to file, simply attach the label provided, check the box in the heading to indicate that your annual gross receipts are normally $25,000 or less, and sign the return.

If a return is required, it must be filed by the 15th day of the fifth month after the end of your annual accounting period. A penalty of $20 a day is charged when a return is filed late, unless there is reasonable cause for the delay. However, the maximum penalty charged cannot exceed $10,000 or 5 percent of your gross receipts for the year, whichever is less. For organizations with gross receipts exceeding $1,000,000 in any year, the penalty is $100 per day per return, unless there is reasonable cause for the delay. The maximum penalty for an organization with gross receipts exceeding $1,000,000 shall not exceed $50,000. This penalty may also be charged if a return is not complete, so be sure your return is complete before you file it.

You are required to make your annual information return, Form 990 or Form 990-EZ, available for public inspection for three years after the later of the due date of the return or the date the return is filed. You are also required to make available for public inspection your exemption application, any supporting documents, and your exemption letter. Copies of these documents are also required to be provided to any individual upon written or in person request without charge other than reasonable fees for copying and postage. You may fulfill this requirement by placing these documents on the Internet. Penalties may be imposed for failure to comply with these requirements. Additional information is available in Publication 557, Tax-Exempt Status for Your Organization, or you may call our toll free number shown above.

Letter  947 (DO/CG)

-3-

NATIONAL CHRISTIAN FOUNDATION INC

You are not required to file federal income tax returns unless you are
subject to the tax on unrelated business income under section 511 of the Code.
If you are subject to this tax, you must file an income tax return on Form
990-T, Exempt Organization Business Income Tax Return. In this letter we are
not determining whether any of your present or proposed activities are unre-
lated trade or business as defined in section 513 of the Code.

You need an employer identification number even if you have no employees.
If an employer identification number was not entered on your application, a
number will be assigned to you and you will be advised of it. Please use that
number on all returns you file and in all correspondence with the Internal
Revenue Service.

This determination is based on evidence that your funds are dedicated
to the purposes listed in section 501(c)(3) of the Code. To assure your
continued exemption, you should keep records to show that funds are expended
only for those purposes. If you distribute funds to other organizations, your
records should show whether they are exempt under section 501(c)(3). In cases
where the recipient organization is not exempt under section 501(c)(3), there
should be evidence that the funds will remain dedicated to the required
purposes and that they will be used for those purposes by the recipient.

If we have indicated in the heading of this letter that an addendum
applies, the enclosed addendum is an integral part of this letter.

Because this letter could help resolve any questions about your exempt
status and foundation status, you should keep it in your permanent records.

We have sent a copy of this letter to your representative as indicated in
your power of attorney.

If you have any questions, please contact the person whose name and
telephone number are shown in the heading of this letter.

                              Sincerely yours,

                              Lois G. Lerner
                              Director, Exempt Organizations
                              Rulings and Agreements

Letter 947 (DO/CG)

2-21-2001  10:17AM    FROM                                                     P. 2

**Internal Revenue Service**
District Director

Department of the Treasury

Date:  MAY 2 5 1983

Employer Identification Number:
58-1493949
Accounting Period Ending:
November 30
Foundation Status Classification:
509(a)(1) & 170(b)(1)(A)(vi)
Advance Ruling Period Ends:
November 30, 1987
Person to Contact:
Ann Price/jm
Contact Telephone Number:
(404) 221-4516
File Folder Number:
580020898

National Christian Charitable Foundation, Inc.
c/o 127 Peachtree St., NE Suite 200
Atlanta, GA 30303

Dear Applicant:

Based on information supplied, and assuming your operations will be as stated in your application for recognition of exemption, we have determined you are exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code.

Because you are a newly created organization, we are not now making a final determination of your foundation status under section 509(a) of the Code. However, we have determined that you can reasonably be expected to be a publicly supported organization described in section 509(a)(1) & 170(b)(1)(A)(vi).

Accordingly, you will be treated as a publicly supported organization, and not as a private foundation, during an advance ruling period. This advance ruling period begins on the date of your inception and ends on the date shown above.

Within 90 days after the end of your advance ruling period, you must submit to us information needed to determine whether you have met the requirements of the applicable support test during the advance ruling period. If you establish that you have been a publicly supported organization, you will be classified as a section 509(a)(1) or 509(a)(2) organization as long as you continue to meet the requirements of the applicable support test. If you do not meet the public support requirements during the advance ruling period, you will be classified as a private foundation for future periods. Also, if you are classified as a private foundation, you will be treated as a private foundation from the date of your inception for purposes of sections 507(d) and 4940.

Grantors and donors may rely on the determination that you are not a private foundation until 90 days after the end of your advance ruling period. If you submit the required information within the 90 days, grantors and donors may continue to rely on the advance determination until the Service makes a final determination of your foundation status. However, if notice that you will no longer be treated as a section *           organization is published in the Internal Revenue Bulletin, grantors and donors may not rely on this determination after the date of such publication. Also, a grantor or donor may not rely on this determination if he or she was in part responsible for, or was aware of, the act or failure to act that resulted in your loss of section *           status, or acquired knowledge that the Internal Revenue Service had given notice that you would be removed from classification as a section *           organization.

275 Peachtree Street, N.E., Atlanta, GA 30043          (over)                    Letter 1045(DO) (6-77)

If your sources of support, or your purposes, character, or method of operation change, please let us know so we can consider the effect of the change on your exempt status and foundation status. Also, you should inform us of all changes in your name or address.

Generally, you are not liable for social security (FICA) taxes unless you file a waiver of exemption certificate as provided in the Federal Insurance Contributions Act. If you have paid FICA taxes without filing the waiver, you should call us. You are not liable for the tax imposed under the Federal Unemployment Tax Act (FUTA).

Organizations that are not private foundations are not subject to the excise taxes under Chapter 42 of the Code. However, you are not automatically exempt from other Federal excise taxes. If you have any questions about excise, employment, or other Federal taxes, please let us know.

Donors may deduct contributions to you as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for Federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

You are required to file Form 990, Return of Organization Exempt from Income Tax, only if your gross receipts each year are normally more than $10,000. If a return is required, it must be filed by the 15th day of the fifth month after the end of your annual accounting period. The law imposes a penalty of $10 a day, up to a maximum of $5,000, when a return is filed late, unless there is reasonable cause for the delay.

You are not required to file Federal income tax returns unless you are subject to the tax on unrelated business income under section 511 of the Code. If you are subject to this tax, you must file an income tax return on Form 990-T. In this letter, we are not determining whether any of your present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

You need an employer identification number even if you have no employees. If an employer identification number was not entered on your application, a number will be assigned to you and you will be advised of it. Please use that number on all returns you file and in all correspondence with the Internal Revenue Service.

Because this letter could help resolve any questions about your exempt status and foundation status, you should keep it in your permanent records.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

Sincerely yours,

District Director

Enclosures: Form 990 and Instructions, Form 872-C

See Attachment
cc: Wendell R. Bird

Letter 1045(DO) (5-77)

For tax years ending on and after December 31, 1982, organizations whose gross receipts are not normally more than $25,000 are excused from filing Form 990. For guidance in determining if your gross receipts are "normally" not more than the $25,000 limit, see the instructions for the Form 990.

The determination that you will be treated as an organization which is not a private foundation for your first two tax years is extended to your first five tax years in accordance with your request and executed Form 872-C, Consent Fixing Period of Limitation Upon Assessment of Tax Under Section 4940 of the Internal Revenue Code.

2 21-2001 10:19AM    FROM    ●    ●    P.5

Internal Revenue Service
District Director
P. O. Box 1112
ATLANTA, GA   30301

Department of the Treasury

Date: DEC 11 1988

Employer Identification Number:
58-1493347
Contact Person:
BETTY MILLER
Contact Telephone Number:
(404) 331-6040

NATIONAL CHRISTIAN CHARITABLE
FOUNDATION, INC
1215 PEACHTREE ST NE SUITE 700
ATLANTA, GA   30309

Our Letter Dated:
05-25-83
Addendum Applies:
No

Dear Applicant:

This modifies our letter of the above date in which we stated that you
would be treated as an organization which is not a private foundation until
the expiration of your advance ruling period.

Your exempt status under section 501(a) of the Internal Revenue Code as an
organization described in section 501(c)(3) is still in effect. Based on the
information you submitted, we have determined that you are not a private
foundation within the meaning of section 509(a) of the code because you are an
organization of the type described in section 509(a)(1) and 170(b)(1)(A)(vi).

Grantors and contributors may rely on this determination unless the
Internal Revenue Service publishes notice to the contrary. However, if you
lose your section 509(a)(1) status, a grantor or contributor may not rely on
this determination if he or she was in part responsible for, or was aware of,
the act or failure to act, or the substantial or material change on the part of
the organization that resulted in your loss of such status, or if he or she
acquired knowledge that the Internal Revenue Service had given notice that you
would no longer be classified as a section 509(a)(1) organization.

If we have indicated in the heading of this letter that an addendum
applies, the addendum enclosed is an integral part of this letter.

Because this letter could help resolve any questions about your private
foundation status, please keep it in your permanent records.

If you have any questions, please contact the person whose name and
telephone number are shown above.

Sincerely yours,

Paul Williams
District Director

02/14/06  11:45 FAX 503 614 1599          LUIS PALAU EVANG                                    @002

Internal Revenue Service

Date:  February 15, 2005

LUIS PALAU EVANGELISTIC ASSOC
1500 NW 167TH PL
BEAVERTON          OR 97006-7342

Department of the Treasury
P. O. Box 2508
Cincinnati, OH  45201

Person to Contact:
    Richard E. Owens 31-07974
    Customer Service Representative
Toll Free Telephone Number:
    8:30 a.m. to 5:30 p.m. ET
    877-829-5500
Fax Number:
    513-263-3756
Federal Identification Number:
    93-0713827

Dear Sir or Madam:

This is in response to your request of February 15, 2005, regarding your organization's tax-exempt status.

In September 1978 we issued a determination letter that recognized your organization as exempt from federal income tax. Our records indicate that your organization is currently exempt under section 501(c)(3) of the Internal Revenue Code.

Our records indicate that your organization is also classified as a public charity under sections 509(a)(1) and 170(b)(1)(A)(vi) of the Internal Revenue Code.

Our records indicate that contributions to your organization are deductible under section 170 of the Code, and that you are qualified to receive tax deductible bequests, devises, transfers or gifts under section 2055, 2106 or 2522 of the Internal Revenue Code.

If you have any questions, please call us at the telephone number shown in the heading of this letter.

Sincerely,

Janna K. Skufca

Janna K. Skufca, Director, TE/GE
Customer Account Services

INTERNAL REVENUE SERVICE
P. O. BOX 2508
CINCINNATI, OH  45201

DEPARTMENT OF THE TREASURY

Date:  MAY 1 9 2005

MINISTRY VENTURES INC
1080 HOLCOMB BRIDGE BLDG 200
ROSWELL, GA  30076-0000

Employer Identification Number:
  58-2512401
DLN:
  17053092865945
Contact Person:
  HENRY F SHAMBURGER     ID# 31472
Contact Telephone Number:
  (877) 829-5500
Public Charity Status:
  170(b)(1)(A)(vi)

Dear Applicant:

Our letter dated August 24, 2000, stated you would be exempt from Federal
income tax under section 501(c)(3) of the Internal Revenue Code, and you would
be treated as a public charity, rather than as a private foundation, during
an advance ruling period.

Based on the information you submitted, you are classified as a public charity
under the Code section listed in the heading of this letter.  Since your
exempt status was not under consideration, you continue to be classified as
an organization exempt from Federal income tax under section 501(c)(3) of the
Code.

Publication 557, Tax-Exempt Status for Your Organization, provides detailed
information about your rights and responsibilities as an exempt organization.
You may request a copy by calling the toll-free number for forms,
(800) 829-3676.  Information is also available on our Internet Web Site at
www.irs.gov.

If you have general questions about exempt organizations, please call our
toll-free number shown in the heading between 8:30 a.m. - 5:30 p.m. Eastern
time.

Please keep this letter in your permanent records.

Sincerely yours,

Lois G. Lerner
Director, Exempt Organizations
Rulings and Agreements

Letter 1050 (DO/CG)

FROM :NTM FINANCE OFFICE          FAX NO. :4075472355          Feb. 14 2006 23:31PM  P2

Internal Revenue Service          SEP 2 4 1979    Department of the Treasury
District Director

Date:
SEP 21 1979

Employer Identification Number:
39-6024926
Accounting Period Ending:
June 30
Form 990 Required:  ☐ Yes  ☒ No

▷  New Tribes Mission, Inc.
1000 East First Street
Sanford, Florida 32771

Person to Contact:
G. Farley
Contact Telephone Number:
904-791-2636

Dear Applicant:

Based on information supplied, and assuming your operations will be as stated in your application for recognition of exemption, we have determined you are exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code.

We have further determined that you are not a private foundation within the meaning of section 509(a) of the Code, because you are an organization described in section 509(a)(1) & 170(b)(1)(A)(i).

If your sources of support, or your purposes, character, or method of operation change, please let us know so we can consider the effect of the change on your exempt status and foundation status. Also, you should inform us of all changes in your name or address.

Generally, you are not liable for social security (FICA) taxes unless you file a waiver of exemption certificate as provided in the Federal Insurance Contributions Act. If you have paid FICA taxes without filing the waiver, you should contact us. You are not liable for the tax imposed under the Federal Unemployment Tax Act (FUTA).

Since you are not a private foundation, you are not subject to the excise taxes under Chapter 42 of the Code. However, you are not automatically exempt from other Federal excise taxes. If you have any questions about excise, employment, or other Federal taxes, please let us know.

Donors may deduct contributions to you as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for Federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

The box checked in the heading of this letter shows whether you must file Form 990, Return of Organization Exempt from Income tax. If Yes is checked, you are required to file Form 990 only if your gross receipts each year are normally more than $10,000. If a return is required, it must be filed by the 15th day of of the fifth month after the end of your annual accounting period. The law imposes a penalty of $10 a day, up to a maximum of $5,000, when a return is filed late, unless there is reasonable cause for the delay.

400 West Bay St., Jacksonville, Fla.  32202          (over)          Letter 947(DO) (5-77)

Received: 2/14/06 15:37;    770 631 0439 -> Kalline ;  Page 1

US OFFICE TYRONE GA.    Fax:770-631-0439          Feb 14 2006  15:26    P.01

**OM USA**

**Fax**

**Message**

| | |
|---|---|
| To: Rob | Fax: |
| From: Susan Wood | Date: 2-14-06 |
| Re: 501 c 3 letter | Page 1 of |
| CC: | |

---

INTERNAL REVENUE SERVICE                         DEPARTMENT OF THE TREASURY
DISTRICT DIRECTOR
401 W. PEACHTREE ST. NW
ATLANTA, GA  30965

Date:  DEC 2 1993              Employer Identification Number:
                                   22-2512811
                               Case Number:
                                   593245098
OPERATION MOBILIZATION         Contact Person:
P O BOX 444                        JERRY FINKLIN
TYRONE, GA  30290              Contact Telephone Number:
                                   (404) 331-0172
                               Date of Exemption:
                                   September 16, 1960
                               Internal Revenue Code
                                   Section 501(c)(3)


Dear Applicant:

--    Thank you for submitting the information shown on the enclosure.  We have
made it a part of your file.

     The changes indicated do not adversely affect your exempt status and the
exemption letter issued to you continues in effect.

     Please let us know about any future change in the character, purpose,
method of operation, name or address of your organization.  This is a
requirement for retaining your exempt status.

     We have sent a copy of this letter to your representative as indicated
in your power of attorney.

     Thank you for your cooperation.


                              Sincerely yours,


                              Paul Williams
                              District Director


                                                   Letter 976 (DO/CG)

02/14/2005  15:20 FAX                    FINANCE                                    ☑ 001/001

**Internal Revenue Service**

Date:  July 13, 2005

PRISON FELLOWSHIP MINISTRIES
44180 RIVERSIDE PKWY
LANSDOWNE          VA 20176-8421 801

**Department of the Treasury**
P. O. Box 2508
Cincinnati, OH  45201

**Person to Contact:**
  Ms. Julius 3108345
  Customer Service Representative
**Toll Free Telephone Number:**
  8:30 a.m.  to 5:30 p.m. ET
  877-829-5500
**Fax Number:**
  513-263-3756
**Federal Identification Number:**
  62-0988294

Dear Sir or Madam:

This is in response to your request of July 13, 2005, regarding your organization's tax-exempt status.

In January 1997 we issued a determination letter that recognized your organization as exempt from federal income tax. Our records indicate that your organization is currently exempt under section 501(c)(3) of the Internal Revenue Code.

Our records indicate that your organization is also classified as a public charity under sections 509(a)(1) and 170(b)(1)(A)(vi) of the Internal Revenue Code.

Our records indicate that contributions to your organization are deductible under section 170 of the Code, and that you are qualified to receive tax deductible bequests, devises, transfers or gifts under section 2055, 2106 or 2522 of the Internal Revenue Code.

If you have any questions, please call us at the telephone number shown in the heading of this letter.

Sincerely,

*Jenna K. Skufca*

Janna K. Skufca, Director, TE/GE
Customer Account Services

NOV-22-2000 WED 02:31 PM SAMARITANS PURSE          FAX NO. 18655883802          P. 02

Internal Revenue Service
District Director

Department of the Treasury

Date: JUN 2 3 1983

COPY

Samaritan's Purse
702 State Farm Road
Boone, NC  28607

Our Letter Dated:
  November 4, 1981
Person to Contact:
  G. Storey
Contact Telephone Number:
  (404) 221-4516
File Folder Number:
  580013624
Employer Identification
Number:
  58-1437002

\- \-

This modifies our letter of the above date in which we stated that
you would be treated as an organization which is not a private foundation
until the expiration of your advance ruling period.

Based on the information you submitted, we have determined that you
are not a private foundation within the meaning of section 509(a) of the
Internal Revenue Code, because you are an organization of the type described
in section _____*_____. Your exempt status under section 501(c)(3) of the
code is still in effect.

Grantors and contributors may rely on this determination until the
Internal Revenue Service publishes notice to the contrary. However, a
grantor or a contributor may not rely on this determination if he or she was
in part responsible for, or was aware of, the act or failure to act that
resulted in your loss of section __509(a)(1)__ status, or acquired
knowledge that the Internal Revenue Service had given notice that you would
be removed from classification as a section __509(a)(1)__ organization.

Because this letter could help resolve any questions about your private
foundation status, please keep it in your permanent records.

If you have any questions, please contact the person whose name and
telephone number are shown above.

Sincerely yours,

Michael J. Murphy

District Director

*170(b)(1)(A)(vi) and 509(a)(1)

cc:  William E. Poe

275 Peachtree St., N.E., Atlanta, Ga.  30043

Letter 1050 (DO) (7-77)

NOV-27-2000  26:34                                                           P.02

OCT 02 1987

Internal Revenue Service                    Department of the Treasury

District
Director                                    1100 Commerce St., Dallas, Texas 75242

▷  THE NAVIGATORS                           Person to Contact:
   P. O. BOX 6000                           FIRST READ TAX EXAMINER
   COLORADO SPRINGS, CO   80934             Telephone Number:
                                            (214)767-1048
                                            Refer Reply to:
                                            EP/EO:SPB:4950DAL
                                            Date: Sept. 30, 1987

• Gentlemen:

Our records show that____THE NAVIGATORS

_____is exempt from Federal Income Tax under section
501(c)(3) of the Internal Revenue Code. This exemption was granted
   APRIL  1945          and remains in full force and effect. Contr-
ibutions to your organization are deductible in the manner and to the
extent provided by section 170 of the Code.

We have classified your organization as one that is not a private
foundation within the meaning of section 509(a) of the Internal
Revenue Code because your are an organization described in section
   170(b)(A)(vi)              .

If we may be of further assistance, please contact the person whose
name and telephone number are shown above.

                              Sincerely yours,

                              A. Jackson

                              FIRST READ TAX EXAMINER

TOTAL P.02

Internal Revenue Service                    Department of the Treasury

                                            P. O. Box 2508
                                            Cincinnati, OH  45201

Date:  August 1, 2000                       Person to Contact:
                                               John Kennedy ID 31-07297
                                               Customer Service Representative
                                            Toll Free Telephone Number:
                                               8:30 a.m. to 8:30 p.m. EST
Young Life                                     877-829-5500
420 N. Cascade Ave.                         Fax Number:
Colorado Springs, CO 80903                     513-263-3756
                                            Federal Identification Number:
                                               84-0385934
                                            Accounting Period Ends:
                                               September 30

Dear Sir or Madam:

This is in response to your request for a letter affirming your organization's exempt status.

In March 1942 we issued a determination letter that recognized your organization as exempt
from federal income tax under section 101(6) of the Internal Revenue Code of 1939 (now
section 501(c)(3) of the Internal Revenue Code of 1986). That determination letter is still in
effect.

We classified your organization as a publicly supported organization, and not a private
foundation, because it is described in sections 509(a)(1) and 170(b)(1)(A)(vi) of the Code.
This classification was based on the assumption that your organization's operations would
continue as stated in the application. If your organization's purposes, character, method of
operations, or sources of support have changed, please let us know so we can consider the
effect of the change on the organization's exempt status and foundation status.

Your organization is required to file Form 990, Return of Organization Exempt from Income
Tax, only if its gross receipts each year are normally more than $25,000. If a return is
required, it must be filed by the 15th day of the fifth month after the end of the organization's
annual accounting period. The law imposes a penalty of $20 a day, up to a maximum of
$10,000, when a return is filed late, unless there is reasonable cause for the delay.

As of January 1, 1984, your organization is liable for taxes under the Federal Insurance
Contributions Act (social security taxes) on remuneration of $100 or more the organization
pays to each of its employees during a calendar year. There is no liability for the tax imposed
under the Federal Unemployment Tax Act (FUTA).

Organizations that are not private foundations are not subject to the excise taxes under
Chapter 42 of the Code. However, these organizations are not automatically exempt from
other federal excise taxes. If you have any questions about excise, employment, or other
federal taxes, please let us know.

-2-

Young Life
84-0385934

Donors may deduct contributions to your organization as provided in section 170 of the Code.

Bequests, legacies, devises, transfers, or gifts to your organization or for its use are deductible for federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

Your organization is not required to file federal income tax returns unless it is subject to the tax on unrelated business income under section 511 of the Code. If your organization is subject to this tax, it must file an income tax return on Form 990-T, Exempt Organization Business Income Tax Return. In this letter, we are not determining whether any of your organization's present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

The law requires you to make your organization's annual return available for public inspection without charge for three years after the due date of the return. If your organization had a copy of its application for recognition of exemption on July 15, 1987, it is also required to make available for public inspection a copy of the exemption application, any supporting documents and the exemption letter to any individual who requests such documents in person or in writing. You can charge only a reasonable fee for reproduction and actual postage costs for the copied materials. The law does not require you to provide copies of public inspection documents that are widely available, such as by posting them on the Internet (World Wide Web). You may be liable for a penalty of $20 a day for each day you do not make these documents available for public inspection (up to a maximum of $10,000 in the case of an annual return).

Because this letter could help resolve any questions about your organization's exempt status and foundation status, you should keep it with the permanent records of the organization.

If you have questions, please call us at the telephone number shown in the heading of this letter.

Sincerely,

John E. Ricketts, Director, TE/GE
Customer Account Services

**Attachment to Form 1023**
**Schedule D, Section II, Line 1**

**NCF Charitable Trust**
**EIN: 20-4326440**


The Trust's governing board is appointed by National Christian Charitable Foundation, Inc., one of the Trust's Supported Organizations. See page 4, Section 5.5 of the Trust Agreement and page 2, Section 1.5 of the By-Laws, which are attached to this Application and incorporated herein as Tab V and VI, respectively.

F:\Work NCF Documents NCF Charitable Trust - 1023-ATTACHMENT TO FORM 1023-Sch D-II.doc

**Attachment to Form 1023**
**Schedule G, Lines 2 and 5**

**NCF Charitable Trust**
**EIN:  20-4326440**

The Trust anticipates taking over the activities of NCCF Trust, a Section 509(a)(1) public charity based in Texas, and may indirectly receive some or all of NCCF Trust's assets in the future. NCCF Trust is sitused in Texas, and supports National Christian Charitable Foundation, Inc.  For a number of reasons, including the fact that NCCF Trust no longer has a relationship with Texas counsel, its Trustees have decided to create a new trust sitused in Florida.

F: Work NCF Documents\NCF Charitable Trust - 1023\ATTACHMENT TO FORM 1023-Schedule G.doc

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I (a) PLAINTIFFS**

NCF Charitable Trust
1408 North West Shore Blvd., Suite 504
Tampa, FL 33622-2774

**DEFENDANTS**

United States of American and The Internal Revenue Service
1111 Constitution Avenue, NW
Washington, DC 20224

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Hillsborough
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Russell J. Pope (No. 426865)
Pope & Hughes, P.A.
29 W. Susquehanna Ave., Suite 110
Towson, MD 21204
410-494-7777

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ● 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**● E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☒ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

26 USC Sec. 7428; 28 USC Sec. 2201 - Declaratory Judgment seeking tax exempt status

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  1/03/07    SIGNATURE OF ATTORNEY OF RECORD  _____

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.